905 P.2d 535

**Robert VEGA, Plaintiff–Appellant,**

**v.**

**Gregg MORRIS, Dr. Paul Kelly, Madison Street Jail, the County of Maricopa, the Maricopa County Sheriff's Office, Sheriff Tom Agnos, (his Designee or Successor in Office), and the Maricopa County Board of Supervisors, Defendants–Appellees.**

**No. 1 CA–CV 94–0267.**

Court of Appeals of Arizona, Division 1, Department D.

May 16, 1995.

Review Granted Nov. 21, 1995.

Richard Romley, Maricopa County Atty. by Gordon J. Goodnow, Jr., Deputy County Atty., Phoenix, for defendants-appellees.

Robert Vega, Florence, in pro. per.

**OPINION**

VOSS, Judge.

Robert Vega ("Plaintiff") appeals from the trial court's order dismissing with prejudice his tort action against Gregg Morris and others ("Defendants"). We reverse the dismissal and remand to the trial court for proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

When reviewing a dismissal for failure to state a claim upon which relief may be granted, this court assumes the truth of the allegations in the complaint and will uphold the dismissal only if the plaintiff is not entitled to relief under the facts stated in the complaint. *See Menendez v. Paddock Pool Const. Co.*, 172 Ariz. 258, 261, 836 P.2d 968, 971 (App.1991).

Plaintiff underwent surgery between June 16 and 24, 1989, to repair his broken right ankle. On June 28, 1989, he entered the Maricopa County Jail wearing a cast on his right leg. Shortly thereafter, Plaintiff was ordered to get into a shower. Plaintiff protested and informed the officer that his cast

was to be kept dry, at which time he was given a plastic bag to cover the cast and again ordered into the shower. Plaintiff complied. When he was ordered out of the shower, the plastic bag was filled with water and Plaintiff's cast was wet.

On Friday, June 30, 1989, a nurse examined his leg and, upon noting that the cast was wet, informed Plaintiff that there was nothing he could do but refer Plaintiff to a doctor on Monday, July 3, 1989. It was not until Thursday, July 6, 1989, that Plaintiff was examined by Defendant Morris, a physician's assistant, who smelled a foul odor emanating from the cast which was still wet. Defendant Morris, who was "upset or angry" because Plaintiff's condition was not reported sooner to the health unit, removed the cast and discovered that Plaintiff's ankle was infected. Defendant Morris prescribed antibiotics for the infection, placed Plaintiff's leg in a new cast, and indicated that he would examine Plaintiff in seven days.

When Defendant Morris examined Plaintiff on July 13, 1989, he discovered that the infection had spread and prescribed more antibiotics for Plaintiff. One week later, on July 20, 1989, Defendant Morris again removed the cast, only to find that the infection had spread "over a large area of the foot and ankle." Plaintiff also had a fever at this time. Plaintiff was transferred to the infirmary, was medicated intravenously, and was placed in a new cast that was left open at the ankle.

By August 3, 1989, Plaintiff's fever had decreased and Defendant Morris indicated that the infection had subsided. The intravenous medication was stopped, but the fever returned one day later. By August 8, 1989, Plaintiff's condition had deteriorated to such a point that he was transferred to the Maricopa County Medical Center. It was diagnosed that Plaintiff had gangrene which developed because his ankle wound became infected in the wet cast and also because the infection previously had not been treated effectively. Plaintiff underwent surgery the

same day; his leg was not amputated because he refused to give consent to the doctors.

On or about August 12, 1989, doctors operated on Plaintiff again, this time to rebuild his ankle with parts of his upper torso and chest cavity. Plaintiff recovered and eventually returned to the Maricopa County Jail on September 11, 1989. He was transferred to prison on January 11, 1990. While imprisoned, Plaintiff underwent additional surgeries on February 19, 1991, April 9, 1991, and February 11, 1992.

On March 3, 1993, Plaintiff filed his complaint. Defendants filed their answer on March 30, 1993, denying all of Plaintiff's allegations. Then, on January 31, 1994, Defendants filed a motion to dismiss pursuant to Rule 12(b)(1), (2), and (6), Arizona Rules of Civil Procedure, arguing that Plaintiff's claim was barred by the statute of limitations. After both parties briefed this motion, the trial court dismissed Plaintiff's complaint with prejudice on April 11, 1994.

On May 11, 1994, Plaintiff timely filed this appeal in which he argues that the trial court erred by dismissing his complaint with prejudice because it incorrectly applied Arizona Revised Statutes Annotated ("A.R.S.") section 12–502(B) (1992).[1] We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## DISCUSSION

Plaintiff contends that the trial court erroneously concluded that he failed to file his complaint within the statute of limitations period. We agree.

### A. Statute of Limitations.

 A.R.S. section 12–542 (1992) establishes the applicable statute of limitations period for this action, and provides:

> Except as provided in [A.R.S. section] 12–551 there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

---

1. Plaintiff alternatively contends that the statute of limitations was tolled because he delayed filing his civil complaint out of a fear of retaliation by prison officials. Because our resolution of a

prisoner's disability pursuant to A.R.S. section 12–502(B) is dispositive of the present appeal, we need not explore this issue.

1. For injuries done to the person of another including causes of action for medical malpractice as defined in [A.R.S. section] 12–561.

Arizona courts have recognized that a cause of action "accrues" when a plaintiff knows or reasonably should have known of a defendant's negligent conduct. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979); *see also Kowske v. Life Care Centers of America*, 176 Ariz. 535, 537, 863 P.2d 254, 256 (App.1993); *Angus Medical v. Digital Equipment*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App.1992).

■ Here, Plaintiff's complaint demonstrates that he discovered or reasonably should have discovered the arguably negligent conduct of Defendants no later than August 8, 1989, when he was admitted into the Maricopa County Medical Center. It was at that point that he had a fever, that his ankle and foot were diagnosed to have gangrene, and that he learned that immediate surgery was necessary—all because his cast got wet in the shower and because the resulting infection was not treated effectively earlier. Therefore, because Plaintiff's cause of action accrued no later than August 8, 1989, the statute of limitations on this action ran on August 8, 1991, unless it otherwise was tolled.

## B. Tolling Pursuant to A.R.S. Section 12–502(B).

A.R.S. section 12–502(B) provides:

If a person entitled to bring an action ... is at the time the cause of action accrues imprisoned, the period of such disability shall exist only until such time as the person imprisoned discovers the right to bring the action or with the exercise of reasonable diligence should have discovered the right to bring the action, whichever occurs first, and such person shall have the same time after the disability ceases to exist which is allowed to others.

This statute was first interpreted in *Zuck v. State*, 159 Ariz. 37, 40, 764 P.2d 772, 775 (App.1988). In that case, the plaintiff filed a claim in February 1986 that prison officials in July 1981 breached their statutory duty to provide medical care for prisoners. *Id.* at 38–39, 764 P.2d at 773–74. After concluding that former A.R.S. section 12–502 [2] tolled the statute of limitations until August 3, 1984, this court then discussed when the period of disability ended pursuant to the revised (and current) version of A.R.S. section 12–502(B). This court noted:

> Plaintiff's remaining claim ... could have been time barred as early as August 1985 if he was aware of his right to bring the action when the amended statute took effect in August 1984. However, summary judgment on the statutory duty claim would need to be supported by a finding of his awareness; in the absence of such a finding in the present record we must remand that claim to the trial court for determination of when plaintiff discovered or reasonably should have discovered the existence of this claim. *See Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979). The applicable one-year [statute of limitations] period ... should apply from that point to determine whether the claim was barred in February 1986 when plaintiff filed his complaint.

*Id.* at 40–41, 764 P.2d at 775–76.

Two decisions have since addressed when the period of conditional disability for prisoners ends as interpreted by *Zuck*. First, in *Vaughan v. Grijalva*, 927 F.2d 476 (9th Cir. 1991), the United States Court of Appeals for the Ninth Circuit considered *Zuck* and also examined the plain meaning of A.R.S. section 12–502(B). The court, quoting extensively from *Zuck*, held that pursuant to A.R.S. section 12–502(B) a prisoner's period of disability ends when such prisoner discovers or reasonably should have discovered the *right* to bring an action. *Id.* at 481. The second case, *Jimenez v. Lewis*, 176 Ariz. 533, 862 P.2d 906 (App.1993), was decided by Division

2. Prior to its amendment in 1984, former A.R.S. section 12–502 established an absolute disability for prisoners, and provided:

> If a person entitled to bring an action ... is at the time the cause of action accrues ...

imprisoned, the period of such disability shall not be deemed a portion of the period limited for commencement of the action. Such person shall have the same time after removal of the disability which is allowed to others.

Two of this court. There, the court also cited *Zuck* but reached a conclusion different from that reached in *Vaughan,* stating:

> "The discovery rule applies to the facts which give rise to the cause of action, not to the legal significance of such facts." [Citation omitted.] We believe that principle equally applicable to the provision of A.R.S. [section] 12–502(B) that one imprisoned has the statute [of limitations] tolled until he "discovers the right to bring the action or with the exercise of reasonable diligence should have discovered the right to bring the action." While discovery of "the right to bring the action" could be interpreted expansively to mean knowledge of legal rights, we can discern no reason why the legislature would want the statute [of limitations] to run against law-abiding persons ignorant of the legal significance of known facts but not against imprisoned criminals similarly ignorant. We therefore reject the apparently contrary construction in *Vaughan v. Grijalva,* 927 F.2d 476 (9th Cir.1991).

176 Ariz. at 533–34, 862 P.2d at 906–07. In sum, Division Two concluded that pursuant to A.R.S. section 12–502(B) a prisoner's period of disability ends when such prisoner discovers or reasonably should have discovered *conduct* creating a prisoner's right to bring an action. *Id.* at 534, 862 P.2d at 907. In light of these conflicting decisions, we now consider A.R.S. section 12–502(B) and *Zuck.*

■ In construing a statute, our primary purpose is to "determine and give effect to the legislative intent behind the statute." *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). There is also a presumption that the legislature does not include in statutes provisions which are redundant, void, inert, trivial, superfluous, or contradictory. *See State v. Deddens,* 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975); *see also State v. Edwards,* 103 Ariz. 487, 489, 446 P.2d 1, 3 (1968). We must examine the statute *as a whole* and give harmonious effect to *all* its sections. *State v. Ball,* 157 Ariz. 382, 384, 758 P.2d 653, 655 (App.1988) (emphasis added). This court also may consider the historical background of a statute to "shed light on its meaning and intent."

*Dupnik v. MacDougall,* 136 Ariz. 39, 42, 664 P.2d 189, 192 (1983).

■ We believe *Vaughan* expresses the better construction of A.R.S. section 12–502(B) and *Zuck.* First, we recognize that the plain language of this statute supports the conclusion that a prisoner's conditional disability ends when such prisoner discovers or reasonably should have discovered the right to bring an action, not the conduct creating the right to bring an action. Indeed, the legislature identified two separate occurrences in A.R.S. 12–502(B): (1) the "time the cause of action accrues;" and (2) the "time ... [a prisoner] discovers the right to bring the action or with the exercise of reasonable diligence should have discovered the right to bring the action...." The use of these different terms within the same sentence of this statute is strong evidence suggesting that the legislature distinguished between these occurrences.

Second, this construction of A.R.S. section 12–502(B) is further supported by the fact that we would render this statute meaningless were we to follow *Jimenez.* If a prisoner's period of disability ends at the time such prisoner discovers or reasonably should have discovered conduct creating the right to bring a legal action, then as a matter of law the period of disability ends at the same time a prisoner's cause of action accrues. Accordingly, there would never be a period of disability after the cause of action accrues. Such a result does not comport with the history of A.R.S. section 12–502(B). Former A.R.S. section 12–502 established an absolute disability for prisoners that lasted for the duration of imprisonment for any claim accruing while imprisoned. When amending this statute in 1984, the legislature could have been persuaded by the policy considerations recognized in *Jimenez* and eliminated this disability entirely. Instead, it established a conditional disability for prisoners with the present version of A.R.S. section 12–502(B). Considering both the statute's plain meaning and historical context, we would violate the legislative intent were we to construe it as in *Jimenez.* Regardless of wheth-

er we agree or disagree with the policy[3] the legislature is attempting to effectuate, our obligation as a court is to interpret this statute so as to avoid rendering it meaningless.

Therefore, we hold that a prisoner's period of disability ends pursuant to A.R.S. section 12–502(B) when such prisoner discovers or reasonably should have discovered the *right* to bring the action, not the *conduct* creating the cause of action.[4]

■ Here, when dismissing Plaintiff's complaint, the trial court found:

> It appears that the [P]laintiff discovered or should have discovered the [D]efendants' alleged wrong more than two years before he filed his complaint. While he may not have known of all the consequences of that alleged wrong more than two years before he filed, he appears to have known of some of them.

The court's finding does not address when Plaintiff discovered or should have discovered his right to bring the action against Defendants. As in *Vaughan,* there is nothing on the face of the complaint that indicates to us when Plaintiff discovered his right to bring his action. *See* 927 F.2d at 481. Likewise, we cannot determine a specific date when Plaintiff, in the exercise of reasonable diligence, should have discovered his right to file this complaint. Absent such specific findings, we cannot conclude that Plaintiff is not entitled to any relief under the facts stated in his complaint. *See Zuck,* 159 Ariz. at 40–41, 764 P.2d at 775–76.

## CONCLUSION

Because the trial court applied the wrong standard, we reverse the dismissal of Plaintiff's complaint and remand this matter for further proceedings consistent with this opinion.

EHRLICH and KLEINSCHMIDT, JJ., concur.

---

3. This court has noted that A.R.S. section 12–502 "provides for the tolling of the statute of limitations during periods of minority, imprisonment[,] or insanity.... The statute is based on a public policy that it would be inequitable to hold persons under such disabilities to strict time limitations for filing legitimate claims." *Ulibarri v. Gerstenberger,* 178 Ariz. 151, 159, 871 P.2d 698, 706 (App.1993). In addition, the United States Supreme Court recently articulated another rationale for enacting a disability statute for prisoners, noting that a legislature reasonably might conclude that inmates who file civil suits "may not have a fair opportunity to establish the validity of their allegations while they are confined." *See Hardin v. Straub,* 490 U.S. 536, 544, 109 S.Ct. 1998, 2003, 104 L.Ed.2d 582 (1989).

4. We can envision factual circumstances in which a prisoner simultaneously would discover both the conduct creating a cause of action and the right to bring such action. Our holding today merely establishes that these occurrences do not necessarily occur simultaneously as a matter of law.