209 P.3d 153

**STATE of Arizona, Appellee,**

v.

**Michael JERNIGAN, Appellant.**

**No. 1 CA–CR 07–0117.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 13, 2009.

---

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals Section, and William S. Simon, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Cory Engle, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WHITTEN, Judge.*

¶ 1 Michael Jernigan appeals from his convictions and sentences on two counts of theft of a credit card and one count of shoplifting. He was convicted of those crimes after a trial *in absentia* ended on August 16, 2005. Jernigan was subsequently apprehended on a bench warrant and sentenced. On appeal, Jernigan argues that the trial court erred in denying his motion for judgment of acquittal made pursuant to Arizona Rule of Criminal Procedure 20. For the following reasons, we reject Jernigan's argument and therefore affirm.

---

\* Pursuant to Article 6, Section 3, of the Arizona Constitution, the Arizona Supreme Court designated the Honorable Christopher T. Whitten, Judge of the Arizona Superior Court, to sit in this matter.

1. We view the facts in the light most favorable to sustaining the verdicts and resolve all inferences

## FACTUAL BACKGROUND[1]

¶ 2 Jernigan walked into a Target store in Maricopa County, Arizona, on March 24, 2005. He was followed by a security guard as he walked around the store. The guard watched him as he placed a car stereo in his pants. When he attempted to leave the store without paying for the stereo, the guard stopped him and called the police. While waiting for the police to arrive, Jernigan admitted to the guard that he had intended to steal the stereo.

¶ 3 Upon arriving at the store, the police searched Jernigan's wallet and found several items, including a partial book of checks and a credit card belonging to T.H. and a credit card belonging to P.P.[2] Jernigan admitted that he had possessed all of these items for nearly two weeks and that he had made no effort to contact T.H. or P.P., despite the fact that contact information was printed on all of the items to use in the event that they were lost or stolen.

## DISCUSSION

¶ 4 Jernigan does not challenge his conviction and sentence on the shoplifting count. Additionally, Jernigan concedes that the State introduced sufficient evidence that he possessed the credit cards. He asserts, however, that the trial court should have granted his motion for judgment of acquittal because there were no facts from which a reasonable jury could conclude that he appropriated the credit cards to his use.

¶ 5 Arizona Rule of Criminal Procedure 20 provides that "the court shall enter a judgment of acquittal of one or more offenses charged in an indictment, information or complaint after the evidence on either side is closed, if there is no substantial evidence to warrant a conviction." As used in this rule, "substantial evidence" means "evidence that

---

against Jernigan. *State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App.1997).

2. We use the initials of the victims' names to protect their privacy. *State v. Maldonado*, 206 Ariz. 339, 341 n. 1, ¶ 2, 78 P.3d 1060, 1062 n. 1 (App.2003).

reasonable persons could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Edwards,* 136 Ariz. 177, 186, 665 P.2d 59, 68 (1983). Such evidence may be completely circumstantial. *State v. Blevins,* 128 Ariz. 64, 67, 623 P.2d 853, 856 (App.1981). If reasonable minds could differ on the inferences to be drawn from the evidence, a motion for acquittal must be denied. *State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993).

¶ 6 Jernigan was convicted of two counts of theft of a credit card in violation of Arizona Revised Statutes ("A.R.S.") section 13–2102 (Supp.2007),[3] which provides, in pertinent part:

> A person commits theft of a credit card ... if the person ... [c]ontrols a credit card without the cardholder's or issuer's consent through conduct prescribed in section 13–1802 [theft] or 13–1804 [extortion].

The "conduct prescribed in section 13–1802" includes knowingly coming "into control of lost, mislaid or misdelivered property of another under circumstances providing means of inquiry as to the true owner and *appropriat[ing] such property to the person's own or another's use* without reasonable efforts to notify the true owner." A.R.S. § 13–1802(A)(4) (Supp.2007) (emphasis added).

¶ 7 Jernigan argues that the State failed to prove that he appropriated the victims' credit cards to his own use. He contends that, in order to do so, the State was required to prove that he actually used, or intended to use, the credit cards to make a purchase. We reject Jernigan's argument for three legal reasons and because the facts support the verdict.

¶ 8 First, a clear reading of A.R.S. §§ 13–2102 and 13–1802(A)(4) reveals that actual use of the stolen credit card, or proof of actual intent to use the credit card to make a purchase, is not required, only that one "appropriates" the credit card "to the person's own or another's use." A.R.S. § 13–1802(A)(4).

¶ 9 When interpreting the meaning of particular statutory language, we seek first to discern the intent of the legislature. *State v. Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). "We look primarily to the language of the statute itself and give effect to the statutory terms in accordance with their commonly accepted meanings." *Id.* In doing so, we apply a practical and commonsense construction. *Douglass v. Gendron,* 199 Ariz. 593, 596, ¶ 10, 20 P.3d 1174, 1177 (App.2001). When a word is not defined in any statute, we generally "refer to a widely used dictionary to determine its meaning." *Files v. Bernal,* 200 Ariz. 64, 66, ¶ 5, 22 P.3d 57, 59 (App.2001).

¶ 10 "Appropriate" means "to take exclusive possession of," Webster's New Collegiate Dictionary 56 (1974), "to take possession of or make use of exclusively for oneself, often without permission," American Heritage Dictionary, Second Edition 122 (1982), or "to exercise dominion and control over an object to the extent, and for the purpose, of making it subserve one's own proper use or pleasure." Black's Law Dictionary 131 (4th ed.1957).

¶ 11 Applying the above rules of statutory interpretation, we conclude that the phrase "appropriates to the person's own use" means that the stolen item must be held in possession of the defendant, to the exclusion of the true owner, so that it is capable of use by the defendant.

¶ 12 As an example of the distinction between Jernigan's interpretation of the statute and our holding: to be convicted of theft of a hammer under A.R.S. § 13–1802(A)(4), the evidence must show that the defendant came into control of a lost, mislaid or misdelivered hammer belonging to another under circumstances providing means of inquiry as to the true owner and appropriated it to his or her own or another's use without reasonable efforts to notify the true owner. No proof that the defendant had driven a nail, or intended to use the hammer to drive a nail, would be necessary. It would be enough if the defen-

---

**3.** We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

dant had the use of the hammer to the exclusion of its true owner.

¶ 13 Theft of a credit card, in violation of A.R.S. § 13–2102, using A.R.S. § 13–1802(A)(4) as a predicate, is similarly proven if the defendant came into control of a lost, mislaid or misdelivered credit card belonging to another under circumstances providing means of inquiry as to the true owner and appropriated it to his or her own or another's use without reasonable efforts to notify the true owner, even absent evidence of the actual use, or actual intent to use, the credit card to make a purchase. It is the defendant's exercise of exclusive possession of the credit card, to the exclusion of the true owner, which is critical.

¶ 14 The second reason we reject Jernigan's argument is that his suggested interpretation of the offense of theft of a credit card would often be redundant with the crime of fraudulent use of a credit card as set forth in A.R.S. § 13–2105 (2001) or an attempted commission of that crime.[4]

¶ 15 Our primary objective in interpreting a statute is to determine the legislature's intent by considering the statutes as a whole and giving harmonious effect to all sections. *Douglass,* 199 Ariz. at 596, ¶ 10, 20 P.3d at 1177. Statutes on the same subject matter are to be construed in harmony together. *Kahn v. Thompson,* 185 Ariz. 408, 412, 916 P.2d 1124, 1128 (App.1995)("[W]e consider the words, context, subject matter, effects and consequences, spirit and reason of the law, and other acts *in pari materia.*") (citation omitted).

¶ 16 One who actually uses a stolen credit card to make a purchase, or intends to do so and takes some act in furtherance of that intent, does not complete the crime of theft of a credit card; instead, she commits the separate crime of fraudulent use of a credit card or attempted fraudulent use of a credit card. *See Phoenix Newspapers, Inc. v. Dep't of Corrections,* 188 Ariz. 237, 244, 934 P.2d 801, 808 (App.1997) ("[W]e presume that the

legislature does not enact superfluous or reiterative legislation."); *Vega v. Morris,* 183 Ariz. 526, 530, 905 P.2d 535, 539 (App.1995) (recognizing presumption that the legislature does not include provisions which are redundant, void, inert, trivial, or superfluous).

¶ 17 Our holding is consistent with the legislative history of A.R.S. § 13–1802(A)(4). The crime of theft, prior to 1978, was codified in A.R.S. § 13–621. All forms of theft under A.R.S. § 13–621 required proof of the defendant's specific intent. *State v. Fleming,* 117 Ariz. 122, 128, 571 P.2d 268, 274 (1977). The current statute was adopted in October 1978. It created six separate classifications under which theft may be found, each described in separate subsections of A.R.S. § 13–1802(A). In *State v. Morse,* the court specifically held that intent was a necessary element under both subsections (1) and (3), but was not necessary under the remaining subsections, including (5), under which Morse was convicted. 127 Ariz. 25, 30–31, 617 P.2d 1141, 1146–47 (1980). Thus, although *dicta* in *Morse,* the argument that specific intent is necessary under A.R.S. § 13–1802(A)(4) has already been rejected by our supreme court.

¶ 18 Finally, we reject Jernigan's argument as it applies to the specific facts in this case because the State presented abundant evidence from which a reasonable juror could conclude that he appropriated the credit cards "to his use." The two stolen credit cards were kept together with the stolen checks. The intended purpose of each of these items is to acquire goods or services. It could be inferred from Jernigan's possession of more than one stolen item that he did not innocently possess them for some other purpose. He stored all the items in his wallet, a place traditionally reserved for keeping the tools of commerce.

¶ 19 Additionally, both victims testified that their credit cards had been missing for some time between a few weeks and a few months. Jernigan admitted that he had pos-

---

4. Section 13–2105(A)(1) provides, in pertinent part, as follows:

A person commits fraudulent use of a credit card if the person ... [w]ith intent to defraud, uses, for the purposes of obtaining or attempt- ing to obtain money, goods, services or any other thing of value, a credit card or credit card number obtained or retained in violation of this chapter....

sessed both credit cards and T.H.'s stolen checks for almost two weeks. All these items had information on them that would have made it easy for Jernigan to report his possession of them, if he possessed them for some other purpose than to eventually benefit from their use. He never reported his possession of them.

¶ 20 From all of this evidence, even absent evidence of Jernigan's use of the credit cards, a reasonable jury could infer that Jernigan appropriated the credit cards to his use.

## CONCLUSION

¶ 21 For all of these reasons, the trial court properly denied Jernigan's motion for acquittal. We therefore affirm his convictions and sentences.

CONCURRING: MICHAEL J. BROWN, Presiding Judge and DANIEL A. BARKER, Judge.