KINDRED NURSING CENTERS EAST, LLC *v.*
ARTHUR MORIN
(AC 31176)

Robinson, Alvord and Peters, Js.

Argued September 14—officially released November 23, 2010

*Marc S. Blubaugh*, pro hac vice, with whom were *James F. Biondo* and, on the brief, *Judith Raines, Jennifer M. Turk*, pro hac vice, and *Sara Bunke Evans*, pro hac vice, for the appellant (plaintiff).

*James R. Fogarty*, for the appellee (defendant).

*Opinion*

PETERS, J. Under our common law, a power of attorney creates a formal contract of agency between the grantor and his attorney in fact. *Long* v. *Schull*, 184 Conn. 252, 256, 439 A.2d 975 (1981). Under our statutory law, this agency relationship encompasses a variety of transactions that the grantor presumptively has authorized his attorney in fact to undertake on his behalf. General Statutes § 1-42 et seq. The central issue in this case is whether, pursuant to these established legal principles, a person to whom a resident of a nursing home has given a power of attorney has a duty to assist the nursing home in securing the continuation of the resident's eligibility for medicaid financing.[1] Concluding that an attorney in fact had no such duty, the trial court granted his motion for summary judgment. The nursing home has appealed. We affirm the judgment of the court.

On April 2, 2008, the plaintiff, Kindred Nursing Centers East, LLC, doing business as Courtland Gardens Health Center, filed a complaint charging the defendant, Arthur Morin, with negligence[2] for having failed to cooperate in the determination of the continued medicaid

---

[1] "In order to qualify for [m]edicaid, an individual must establish that he or she is financially needy by virtue of the lack of significant income and assets." *St. Joseph's Living Center, Inc.* v. *Windham*, 290 Conn. 695, 734–35, 966 A.2d 188 (2009).

[2] Although the plaintiff's complaint also charged the defendant with fraud, that claim has not been pursued in this appeal.

eligibility of the plaintiff's patient, Charles Sclafani. After the defendant filed an answer denying his liability, the parties filed cross motions for summary judgment. Issuing only a brief memorandum of decision, the trial court denied the plaintiff's motion and granted the defendant's motion.[3] The plaintiff has appealed.

In rendering its judgment, the court relied on the following uncontested representations of fact in the affidavits and exhibits filed in support of each party's motion for summary judgment. On August 30, 2006, Sclafani, while a patient in the plaintiff's nursing home,[4] executed a document conferring a power of attorney on the defendant. The power of attorney authorized the defendant to act on Sclafani's behalf in accordance with the provisions of the Connecticut Statutory Short Form Power of Attorney Act as codified in General Statutes §§ 1-42 to 1-56.

Sclafani and his sister, Frances Genise, jointly owned a bank account at Wachovia Bank. The existence of this bank account led the state department of social services (department) to question Sclafani's continued eligibility for medicaid.[5] Accordingly, one of the plaintiff's employees asked the defendant to withdraw the balance of the account. On September 11, 2006, after consulting Sclafani, the defendant did so, keeping the proceeds of $2671.20 in an uncashed bank check. The defendant declined to use the proceeds to reduce Sclafani's net worth to less than the $1600 threshold for

---

[3] The court's order denying the plaintiff's motion stated that "there are substantial issues of material fact and law as to [the] standing of the plaintiff and the claimed negligence of the [defendant]." The court's judgment granting the defendant's motion stated that "there is no issue of material fact as to [the] defendant's cross-motion for summary judgment and . . . [the] defendant is entitled to judgment as a matter of law."

[4] The plaintiff operated the Courtland Gardens Health Center, at which Sclafani resided from 2004 until his death on April 5, 2007. He left no estate to be probated when he died.

[5] Sclafani's eligibility for medicaid funding had been approved at the time of his admission to the nursing home.

continued medicaid eligibility because Sclafani never authorized him to do so.

The plaintiff thereafter informed the defendant that the department had renewed its request for information about the disposition of the funds in the Wachovia account. Although the defendant earlier had provided other information relating to Sclafani's medicaid eligibility to the department, the defendant declined to respond to this inquiry without authorization from Sclafani. As a result, Sclafani's medicaid eligibility was terminated on October 20, 2006. The plaintiff incurred substantial unreimbursed expenses for Sclafani's care until his death in April, 2007.

The plaintiff's appeal has two parts. It challenges the propriety of the court's denial of its motion for summary judgment and the propriety of the court's granting of the defendant's motion for summary judgment. Under well established principles of law, the plaintiff is entitled to plenary review of its challenges to the validity of the court's rulings. *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

I

The plaintiff challenges the court's denial of its own motion for summary judgment and the court's conclusion that "there are substantial issues of material fact and law as to [the] standing of the plaintiff and the claimed negligence of the defendant." Because the plaintiff did not ask the court to articulate the grounds for its decision; see Practice Book § 66-5; the record contains no statement of the court's reasoning in coming to its conclusion.

Before addressing the merits of the plaintiff's arguments, we must address our authority to consider them. Ordinarily, the denial of a motion for summary judgment is not appealable. *Brown & Brown, Inc.* v.

*Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). That rule does not apply, however, if the moving party was not afforded the opportunity to have a full trial on the merits. *Bristol* v. *Vogelsonger*, 21 Conn. App. 600, 609, 575 A.2d 252 (1990). Because the trial court in this case granted the defendant's motion for summary judgment, the plaintiff's appeal falls within this exception to the general rule, and, accordingly, it is properly before us.

On the merits, the plaintiff asserts that its affidavit and the exhibits attached thereto establish its claim that it was a third party beneficiary of the duty that the defendant, as an attorney in fact, owed to Sclafani to maintain Sclafani's medicaid eligibility. The plaintiff alleges that, although apprised of an inquiry by the department into the disposition of the Sclafani bank account, the defendant negligently declined to honor his obligation to Sclafani and, by necessary implication, to the plaintiff, to respond to the questions posed by the department.

The plaintiff acknowledges that the defendant's responsibilities as Sclafani's attorney at law would not authorize its third party beneficiary claim. *Krawczyk* v. *Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988). It does not contest the defendant's representation that his refusal to cooperate in the department's inquiry was based on the fact that Sclafani did not authorize him to do so.[6] It has not suggested that Sclafani lacked the competence to grant or to withhold such authority.

---

[6] The plaintiff did not avail itself of the opportunity to ask the defendant, as a person who had legal access to Sclafani's assets, to sign a contract requiring him to use those assets to pay for services rendered to Sclafani. See 42 U.S.C. § 1396r (c); *Sunrise Healthcare Corp.* v. *Azarigian*, 76 Conn. App. 800, 806–807, 821 A.2d 835 (2003). The statute authorizes such a contract as long as it contains no requirement for the promisor personally to guarantee the payment of nursing care services. *Sunrise Healthcare Corp.* v. *Azarigian*, supra, 806–807.

The plaintiff's argument thus devolves into the proposition that, as a matter of law, the fiduciary responsibilities of an attorney in fact are greater than those of an attorney at law. It maintains that, like a conservator, the defendant had a duty to Sclafani to protect his medicaid eligibility and that it had standing to enforce that duty as its third party beneficiary. In support of this proposition, the plaintiff cites General Statutes § 45a-144 and *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 778 A.2d 93 (2001), both of which concern the enforceability of a *probate bond.* It seems to us, however, that these authorities demonstrate the weakness of the plaintiff's argument. This is not a case about enforcing a probate bond because no such bond has ever been contemplated. More important, this is not a case about the liability of a conservator because the defendant, in fact, never undertook such a role and, indeed, under our statutes, could not have done so, because Sclafani was never adjudicated to have been incompetent. See General Statutes § 45a-644. In an area of the law as comprehensively codified as that of conservatorship, we decline to impute to the legislature an intent to impose the same duties on an attorney in fact as the law now imposes on a conservator. See, e.g., *In re Ralph M.*, 211 Conn. 289, 306–307, 559 A.2d 179 (1989) ("Where a statute, with reference to one subject contains a given provision, the omission of such provision from a [similar] statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." [Citations omitted; internal quotation marks omitted.]).

In addition to ascribing to an attorney in fact the responsibilities of a conservator, the plaintiff relies on

two out-of-state cases in support of its general claim that the defendant had a duty to preserve Sclafani's medicaid eligibility. Neither of these cases supports the plaintiff's argument.[7]

Perhaps in response to the scarcity of reported litigation defining the responsibilities of an attorney in fact, our legislature has enacted the Connecticut Statutory Short Form Power of Attorney Act, General Statutes §§ 1-42 to 1-56 (act).[8] The power of attorney that Sclafani executed expressly referred to this act. In any case, even though the parties have not undertaken an analysis of the act, either at trial or in this court, we may take judicial notice of relevant legislation whenever it comes to our attention. *Rusch* v. *Cox*, 130 Conn. 26, 33, 31 A.2d 457 (1943).

The act is illuminating in several respects. A catchall section, General Statutes § 1-55, provides that "[i]n a statutory short form power of attorney, the language conferring general authority with respect to all other matters shall be construed to mean that the principal authorizes the agent to act as an alter ego of the principal with respect to any matters and affairs not enumerated in sections 1-44 to 1-54, inclusive, *except health care decisions*, and which the principal can do through an agent." (Emphasis added.)

The preceding sections describe, in great detail, the scope of authority that a principal presumptively has

---

[7] As the defendant notes, the first case, *Auburn Manor* v. *Irvin O. Buschkowsky Revocable Trust*, 2006 WL 2806698, is an unpublished Minnesota case that bears the legend that it may not be cited and is not precedential. The second case, *Aristocrat Lakewood Nursing Home* v. *Mayne*, 133 Ohio App. 3d 651, 673–74, 729 N.E.2d 768 (2000), holds that the plaintiff had failed to prove that it was entitled to avail itself of the fiduciary duty that an attorney in fact owed to his principal.

[8] The power of attorney act was first enacted in 1965 and has since been amended for technical changes. As best we can tell, there is no relevant legislative history to illuminate its origins.

conferred on an attorney in fact with respect to various types of transactions. For example, General Statutes § 1-47 (1) authorizes an attorney in fact "[t]o . . . modify and terminate any deposit account . . . made by or on behalf of the principal," and General Statutes § 1-52 (9) authorizes an attorney in fact to prepare and to execute "all tax, Social Security, unemployment insurance and information returns . . . which the agent deems desirable or necessary for the safeguarding of the principal . . . ." Throughout the act, the emphasis is on the *breadth* of the discretionary authority presumptively conferred on an attorney in fact. Correlatively, the act contains not one provision holding an attorney in fact accountable to anyone other than his principal. We have no authority to add to a statute language that it does not contain. See, e.g., *Viera* v. *Cohen*, 283 Conn. 412, 431–32, 927 A.2d 843 (2007) ("It is a principle of statutory construction that a court must construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." [Internal quotation marks omitted.]).

## II

The plaintiff also challenges the propriety of the judgment of the trial court granting the defendant's motion for summary judgment. The plaintiff maintains that the order of the court granting the defendant's motion must be reversed because the court misstated the nature of the plaintiff's claim by characterizing it as a claim that "the plaintiff was plainly intended to be a [third] party

beneficiary of the [defendant's] attorney-client relationship with [Sclafani]." (Internal quotation marks omitted.) According to the plaintiff, that characterization was incorrect because its negligence claim was based on the power of attorney that Sclafani gave to the defendant and not on the fact that the defendant also was Sclafani's attorney at law.

It seems to us unlikely that the court's order was intended to convey the meaning that the plaintiff ascribes to it. To eliminate the risk of any possible confusion, the plaintiff could, however, have asked the court to articulate its holding. It did not do so. "A reviewing court does not presume error; if the party challenging the trial court's ruling has not satisfied its burden of demonstrating that the ruling was factually or legally untenable, a reviewing court must presume that the trial court properly reached its decision." *State v. Payne*, 121 Conn. App. 308, 314, 996 A.2d 302, cert. denied, 297 Conn. 919, 996 A.2d 1193 (2010).

The judgment is affirmed.

In this opinion the other judges concurred.