IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SPQR Venture, Inc., an Arizona corporation, *Plaintiff/Appellant*,

*v.*

ANDREA S. ROBERTSON (fka ANDREA S. WECK) and BRADLEY J. ROBERTSON, wife and husband, *Defendants/Appellees*.

No. 1 CA-CV 14-0341
FILED 5-12-2015

Appeal from the Superior Court in Maricopa County
No. CV2013-000097
The Honorable John Rea, Judge

**AFFIRMED**

COUNSEL

Davis Miles McGuire Gardener, PLLC, Tempe
By Lisa M. Borowsky
And Marshall R. Hunt
*Counsel for Plaintiff/Appellant*

Feola & Traica, P.C., Phoenix
By Steven Feola
*Counsel for Defendants/Appellees*

**OPINION**

Judge Jon W. Thompson delivered the Opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

**T H O M P S O N**, Judge:

¶1    Appellant SPQR Venture (SPQR) appeals from the trial court's grant of summary judgment in favor of Andrea and Bradley Robertson (the Robertsons).  SPQR seeks to expand the reach of creditors under Arizona Revised Statutes (A.R.S.) § 25-215(B) (2007) to include the community property earnings of the non-debtor spouse.   Finding no such extension warranted and no violation of the Uniform Fraudulent Transfers Act (UFTA) (A.R.S.  §§ 44-1001 -1010 (2013)), we affirm the trial court.

## FACTUAL AND PRICEDURAL HISTORY

¶2    SPQR is a judgment creditor of Andrea Robertson (Andrea).  SPQR's predecessor in interest obtained a default judgment against her in the amount of $240,000 plus attorneys' fees, costs, and interest in July 2003, while she was married to her former husband Michael Weck.   The judgment has twice been renewed.  In 2009, Andrea married Bradley Robertson.  SPQR filed the instant garnishment suit against the Robertsons alleging community liability for Andrea's separate premarital debt.  It further alleged that the Robertsons engaged in behavior that violated the UFTA.

¶3    After cross-motions for summary judgment and argument, the trial court ruled in favor of the Robertsons, specifically finding that "contribution" under A.R.S. § 25-215(B) refers only to financial contributions of which Andrea had none. The trial court also found there could be no transfers violating the UFTA because, under A.R.S. § 25-215(B), Bradley's community property income was "immune" from attachment. This appeal followed and we have jurisdiction.

## DISCUSSION

¶4    SPQR asserts that the trial court erred in finding that the Robertsons' community property was not liable for Andrea's premarital debt.  Specifically, SPQR argues that the trial court should have found that Bradley's income should have been used to satisfy Andrea's premarital debt where Andrea's contributions to the Robertsons' community were strictly nonfinancial.  The relevant facts are that Andrea was a stay-at-home mother to their combined five children since her 2009 marriage to Bradley, and that Bradley provides the sole household income.   Andrea's uncontroverted affidavit included the information that Andrea provided full-time care for one of their children who has special needs and who is unable to care for herself.

¶5        SPQR stated its position in its motion for summary judgment this way:

> Ms. Robertson has forgone her previously gainful employment in order to fulfill her current role in the Robertsons' marital community. Ms. Robertson thus makes valuable contributions to the marital community, the monetary equivalent of which may be drawn from the Robertsons' community income to satisfy Ms. Robertson's premarital debts
>
> . . .
>
> Based on Ms. Robertson's wages of $1,500 every two weeks prior to marriage, her child-rearing and homemaking contribution to the marital community is valued at not less than $39,000 per year. Therefore, Judgment Creditor may satisfy the debt from the marital community in the amount of her contribution--$39,000 per year, both from the time of marriage, November 2009, and going forward until the Debt is satisfied.

¶6        Summary judgment may be granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a). The parties here agree there are no genuine issues of material fact. We determine de novo whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000).

¶7        Section 25-215, "Liability of community property and separate property for community and separate debts," reads in pertinent part:

> **B.** The community property is liable for the premarital separate debts or other liabilities of a spouse, incurred after September 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would have been such spouse's separate property if single.

¶8        The key words that SPQR has relied on for its novel theory are "to the extent of the value of that spouse's contributions to the community property." It argues that Andrea provides a quantifiable, if non-financial, value which should open the Robertsons' community income to garnishment. The Robertsons, in response, assert that SPQR's analysis ignores the balance of the section which provides that the community is

liable "only to the extent" a financial contribution "would have been such spouse's separate property if single." SPQR next argues that a proper and broad statutory interpretation supports the underlying legislative purpose of the statute to avoid "two dollar" bankruptcies and to prevent avoidance of existing obligations by the voluntary act of marriage. The trial court agreed with the Robertsons, as do we.

¶9 Statutory interpretation is a question of law that we review de novo. *People's Choice TV Corp. v. City of Tucson*, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002). When the statutory language is clear, we hold to the plain meaning of its terms. *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999). Only when the plain meaning of the statute is unclear do we consider other factors such as legislative history. *Hobson v. Mid–Century Ins. Co.*, 199 Ariz. 525, 529, ¶ 8, 19 P.3d 1241, 1245 (App. 2001). Further, we construe statutes so as to give effect to the whole and presume that "'the legislature does not include in statutes provisions which are redundant, void, inert, trivial, superfluous or contradictory.' " *Vega v. Morris*, 184 Ariz. 461, 463, 910 P.2d 6, 8 (1996) (quoting *Vega v. Morris*, 183 Ariz. 526, 530, 905 P.2d 535, 539 (App. 1995)).

¶10 We find that the statute, when read as a whole, does not support SPQR's argument that Bradley's income can be used to satisfy Andrea's premarital debt where she has no income herself. *See Hines v. Hines*, 146 Ariz. 565, 567, 707 P.2d 969, 971 (App. 1985). Nor do the cases cited by SPQR persuasively support such an extension of A.R.S. § 25-215(B). *See Flexmaster Aluminum Awning Co., Inc. v. Hirschberg*, 173 Ariz. 83, 87, 839 P.2d 1128, 1132 (App. 1992) (creditor could seek recovery from community property on husband's premarital debt only to the extent such debt remained after bankruptcy and only "to the extent of the debtor-spouse's contribution to the community; that is, the value of property that would be the husband's if he were single" and only after wife is joined as a party); *Arab Monetary Fund v. Hashim*, 219 Ariz. 108, 111, ¶ 17, 193 P.3d 802, 805 (App. 2008) (citing A.R.S. § 25–215(B)) (holding, in an action by creditor to recover attorneys' fees accrued in prosecuting husband's premarital obligation from community property, "A premarital debt of one spouse can be recovered from community property, but only to the extent of the value of the debtor spouse's contribution to the community."); *Heinig v. Hudman*, 177 Ariz. 66, 75, 865 P.2d 110, 119 (App. 1993) (holding creditor's judgment against husband could not be satisfied out of community property without first showing that the community was liable). None of these cases permit a recovery against the income of the non-debtor spouse for the "value" of the debtor's nonfinancial services to the community. In *Hines*, this court said that A.R.S. § 25-215(B) "clearly precludes" assignment of non-debtor

spouse's income or wages to satisfy a separate premarital debt of the other spouse. 146 Ariz. at 567, 707 P.2d at 971. We did not allow that there might be a different result upon consideration of the proportion of each spouse's contribution to the overall community. We reject SPQR's assertion that wife's non-monetary contribution should affect the issue.

¶11        For these reasons, the trial court correctly determined that the income of Bradley, the non-debtor spouse, is protected against liability for the premarital debt of Andrea. This is true even where it is uncontested that Andrea provides a service to the family that has value and for which the community would otherwise have to pay. The trial court is affirmed.

¶12        SPQR next argues that the Robertsons concealed community assets in order to defraud the judgment creditor in violation of the UFTA. In its motion for summary judgment, SPQR directed the trial court to examine a sample bank statement that demonstrated how "Ms. Robertson deliberately maintains an account balance less than the statutory minimum for non-wage garnishments. Defendants' scheme of allocating small portions of community income to Ms. Robertson that is then immediately spent is a 'transfer' covered by UFTA" and intended to hinder, delay and defraud the judgment creditor. It asserts that the transfer is either an actual fraudulent transfer under A.R.S. § 44-1004(A) or a constructively fraudulent transfer under A.R.S. § 44-1004(B).

¶13        The transfers at issue are deposits by Bradley from his community property earnings which, SPQR argues, then become Andrea's garnishable community property. It argued before the trial court:

> there's a basis to attach those funds, through [sic], and enter a judgment against the husband . . . that's the basis for that claim. The constructive trust obviously is if you find that the judgment should be effective against Mr. Robertson and that the community contributions that Mrs. Robertson has undertaken, has value, then we would ask the Court to institute a constructive trust to the extent that funds, which can be measured for her contribution, are set aside to pay the judgment.

The trial court, ruling from the bench, found deposits by Bradley could not be an applicable transfer because Bradley was not the debtor. The court explained "those are his funds. Those are his income which is immune from your judgment." We agree.

¶14 Section 44-1004, under the UFTA, "Transfers fraudulent as to present and future creditors," reads in pertinent part:

> **A.** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, *if the debtor made the transfer* or incurred the obligation under any of the following:
>
> 1. With actual intent to hinder, delay or defraud any creditor of the debtor.

(Emphasis added.) Any transfer made into the account at issue was made by Bradley from his community property income. Bradley is not the debtor. His ability to make transfers is not restricted under the UFTA. The trial court had already correctly determined that Bradley's separate property was not directly garnishable, likewise the character of that income did not change into something garnishable by virtue of being deposited into a bank account that never exceeded the level at which garnishment is statutorily authorized. Because of the character of the funds and because the statutory language of A.R.S. § 44-1004(A) is clear that the transfer must be made by the debtor, we affirm the trial court.

## CONCLUSION

¶15 For the above stated reasons, the trial court is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama