******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

D'AURIA, J., with whom MULLINS and KAHN, Js., join, concurring in part and dissenting in part. Although I agree with part II of the majority's opinion, I disagree with part I. I would affirm the judgment of the trial court on both the Connecticut Uniform Fraudulent Transfer Act (CUFTA or act); General Statutes § 52-552a et seq.; and unjust enrichment counts of the complaint, and therefore respectfully dissent in part.

The issue we are asked to determine is whether CUFTA applies to a transfer of a debtor's assets made by the debtor's attorney-in-fact with no participation by the debtor. Under CUFTA, a transfer can only be fraudulent "as to a creditor"; General Statutes § 52-552e (a); if it is "made by a debtor . . . ." General Statutes § 52-552f (b). Relying on this language and decisions from out of state interpreting identical statutes, the trial court concluded that CUFTA did not apply to a transfer made solely by a third party, such as the attorney-in-fact of a debtor, with no participation from the debtor. Because the trial court found that "all of the transfers at issue were made by [the defendant Stephen McGee (Stephen)]" and that "[n]one were made by [Stephen's mother, the named defendant, Helen McGee (Helen)]," and because the court found no evidence that Helen "participated in any fashion in the claimed fraudulent transfers," it concluded that the plaintiff, Geriatrics, Inc., had failed to make out a claim under CUFTA.

The majority reverses the trial court's judgment in favor of Stephen on this count. I disagree and instead would affirm.

I

With few exceptions, which I will note, I have no quarrel with the majority's factual recitation. The trial court's findings are sparse, at least in part, because the live testimony in the case was brief (it was a one-half day trial) and because the trial court's ruling on the CUFTA count (that Stephen was not a "debtor") is ultimately a legal issue. Another explanation for the sparse record could be the plaintiff's failure to develop its case, including by failing to present a clear legal theory for proceeding against Stephen.[1]

To many dispassionate readers, the facts of this case might resemble a familiar family experience. An elderly parent is in failing health. Rather than move the parent immediately to a nursing facility, a child chooses to care for the parent himself, eventually moving into her home. This choice comes at significant cost to the child. As the parent's health worsens, the parent and child agree that to continue this arrangement and keep the parent at home as long as possible, the child must assume greater charge of the parent's needs—health

and financial. No one begrudges the caregiver some compensation for his efforts to keep the parent in the home or for reimbursement for food, bills and other necessities paid out of his own pocket. Record keeping, however, is spotty at best and the timing of payments varies. Of course, no one knows how long the parent will live or how long the child will be able to provide the care. Eventually, though, the parent's needs exceed what the child can provide, the parent is moved to a nursing home, and the parent's remaining assets are "spent down" to qualify for government assistance. If at any point there is a gap in the payments to the nursing home or a delay in routing the government benefits to the nursing home—even due to the nursing home's own actions—the parent will become a debtor of the nursing home.

Stephen's case resembles this fact pattern. In February, 2013, after caring for Helen for several years, Stephen's own health deteriorated, and Helen was admitted to the plaintiff's skilled nursing home, Bel Air Manor, where she agreed to pay for residency. Medicare initially covered much of her expenses. It is fair to assume that Helen and Stephen (and perhaps the plaintiff) believed she would remain eligible for Medicare throughout her stay. But two efforts to qualify for continued benefits failed, and the plaintiff refused to assist Stephen in applying, despite his requests. Finally, a third application was granted, but only with a penalty. Throughout those delays, debt to the plaintiff accumulated, and at the time of her death, Helen owed the plaintiff about $208,000. Stephen was not a party to Helen's contract with the nursing home and was not liable to the nursing home for Helen's debt.

Given the trial court's finding that Helen began accumulating debt once government benefits were stopped, it is perhaps fair to assume she had other creditors at the end of her life. This appeal involves only one creditor, her nursing home. The count on which I disagree with the majority involves that creditor's allegations of fraud. Because the case was tried to judgment, there is no need to construe the facts in the light most favorable to the plaintiff. See *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 755, 159 A.3d 666 (2017) ("[i]n reviewing factual findings [of a trial court] . . . we make every reasonable presumption . . . in favor of the trial court's ruling" [internal quotation marks omitted]). In fact, the trial court found that the plaintiff had failed to prove "that it has a better legal or equitable right to the funds of Helen" and therefore refused to find that Stephen had been unjustly enriched at the plaintiff's expense. Although the trial court agreed that the plaintiff had a rightful claim to Helen's assets because of its contract with Helen, it also found that Stephen had a rightful claim to those assets because of the services and loans he had provided to Helen before and after her debt to the plaintiff arose. The

court made no findings that the payments Stephen received were somehow illegitimate. Rather, the trial court specifically found that on this record the plaintiff had failed to demonstrate that its claim was superior to Stephen's.

Therefore, Stephen's compensation and reimbursement, which the trial court found that he was entitled to, is only potentially subject to CUFTA because of its timing. Had he received these funds before his mother's debt began to accumulate or had her Medicare coverage never lapsed, there would be no claim. Indeed, the plaintiff did not appear to argue to the trial court that Helen was even aware of—much less colluded with Stephen in making—the transfers.

## II

CUFTA permits creditors to set aside or void certain transfers of a debtor's assets when those transfers are made with the purpose of frustrating the creditor's ability to collect its debt. General Statutes § 52-552a et seq. Not all transfers that frustrate creditors are fraudulent transfers under CUFTA, however. Instead, CUFTA sets out four distinct bases for fraudulent transfer liability, each with its own distinct elements. See General Statutes §§ 52-552e and 52-552f.

One basis for liability requires proof of actual fraudulent intent. General Statutes § 52-552e (a) (1) (transfer made with "actual intent to hinder, delay or defraud any creditor"). The other three require only constructive fraud, in which fraud is presumed under the circumstances. See General Statutes § 52-552e (a) (2) (transfer made without debtor "receiving a reasonably equivalent value in exchange," leaving debtor with few assets or inability to pay debts); General Statutes § 52-552f (a) (transfer made while debtor was insolvent or causing debtor to become insolvent and debtor did not receive reasonably equivalent value); General Statutes § 52-552f (b) (transfer to insider of debtor when insider had reason to believe debtor was insolvent).

A transfer does not, however, fall within any of these four bases for liability unless it was "made by a debtor . . . ." General Statutes § 52-552f (b); see also General Statutes § 52-552e (a).[2] The transfers at issue in the case before us were actually carried out by Stephen, pursuant to a power of attorney executed by Helen, and the trial court found that Helen did not participate in any of them. On these facts, I agree with the trial court that the transfer at issue was not "made by a debtor" within the meaning of CUFTA.

## A

To determine the meaning of the statute at issue, we look first to its text, giving any undefined term its ordinary meaning. See General Statutes §§ 1-1 (a) and 1-2z. Neither the plaintiff nor the majority contend that the term "debtor" in §§ 52-552e and 52-552f is ambigu-

ous. Therefore, extratextual evidence of the legislature's intent is not relevant. Neither under § 1-2z is it relevant whether the majority's conclusion "best serve[s]" the "policy underlying the act . . . ." Finally, although it might be expedient to call CUFTA a "creditor-protection" statute, in my view such shorthand is no more useful to the exercise of statutory construction than calling the Bankruptcy Code a "debtor-protection" statute. In truth, like many acts—including uniform acts—CUFTA reflects a legislative balance of policies. Our challenge is not to advance policy, but to divine the legislative will from the statutory text.[3]

We are admonished by the legislature to construe the provisions of this uniform act "to effectuate their general purpose to make uniform the law . . . among states enacting them." General Statutes § 52-552*l*. Although, admittedly, not many courts have confronted the issue before us, those that have addressed it in any detail have uniformly taken a position contrary to the majority. See *Folmar & Associates*, *LLP* v. *Holberg*, 776 So. 2d 112, 116–18 (Ala. 2000), overruled in part on other grounds by *White Sands Group*, *L.L.C.* v. *PRS II*, *LLC*, 32 So. 3d 5, 14 (Ala. 2009); *Methodist Manor Health Center*, *Inc.* v. *Py*, 307 Wis. 2d 501, 505, 746 N.W.2d 824 (App. 2008); *Presbyterian Medical Center* v. *Budd*, 832 A.2d 1066, 1074 (Pa. Super. 2003). Although the majority's reasoning is plausible, its conclusion is not so obvious that any other court—or the plaintiff itself—has made the argument.

The act defines a "debtor" as "a *person* who is *liable* on a *claim*." (Emphasis added.) General Statutes § 52-552b (6). The term "person" extends to "an individual, partnership, corporation, limited liability company, association, organization, government or governmental subdivision or agency, business trust, estate, trust or any other legal or commercial entity." General Statutes § 52-552b (9). "Liable" is not defined in the act, but means "[r]esponsible or answerable in law; legally obligated"; Black's Law Dictionary (10th Ed. 2014) p. 1055; or "obligated according to law or equity"; Merriam-Webster's Collegiate Dictionary (11th Ed. 1993) p. 715. And a "claim" is defined as "a right to payment . . . ." General Statutes § 52-552b (3).

The phrase "made by"—modifying "a debtor"—is also relevant, signaling that the debtor caused the transfer and that the debtor was not passively acted on by the transfer (e.g., "a transfer involving a debtor"). It also specifies that we are to focus on who made the transfer. The subject is the actor, rather than the status of the property (e.g., "a transfer of the debtor's assets") or the result (e.g., "a transfer for the debtor's benefit"). Thus, construed according to its plain meaning, the act in my view refers only to transfers actually made, in some capacity, by the party who owes the debt. See General Statutes § 1-2z.

Nor does the definition of "transfer" change this. I agree with the majority that CUFTA's definition of "transfer" is unquestionably expansive. See General Statutes § 52-552b (12). But that definition is informed by the qualifiers—"made by a debtor"—that follow. Even for "indirect" transfers, which the majority asserts occurred in this case, participation by the debtor is an essential predicate: "An example of an indirect transfer is when A has a claim against B, and instead of B paying A directly for the claim, *A directs B to pay C. . . .* In such a scenario, the debtor never has possession of the funds, but *directs a third party to transfer* those funds to a recipient." (Citations omitted; emphasis added.) *In re FBN Food Services, Inc.*, 175 B.R. 671, 683 (Bankr. N.D. Ill. 1994) (describing indirect transfer under 11 U.S.C. § 548 [2012]), aff'd, 185 B.R. 265 (N.D. Ill. 1995). Nothing in CUFTA expressly extends its reach to transfers of the debtor's assets made solely by a third party, including a debtor's agents.

Indeed, a number of other courts have declined to find liability for transfers of a debtor's assets made by various third parties, including spouses; see, e.g., *SPQR Venture, Inc.* v. *Robertson*, 237 Ariz. 270, 273, 349 P.3d 1107 (App. 2015); subsidiary companies; see, e.g., *Crystallex International Corp.* v. *Petroleos de Venezuela, S.A.*, 879 F.3d 79, 85–89 (3d Cir. 2018); and contractual parties; see, e.g., *Ford-Torres* v. *Cascade Valley Telecom, Inc.*, 374 Fed. Appx. 698, 700 (9th Cir. 2010).

As mentioned previously, courts that have analyzed at all this provision of the uniform act as it applies to agents and attorneys-in-fact have concluded that the plain language the legislatures in their jurisdictions have chosen simply does not accomplish what the majority holds today and declined to permit liability in a creditor's favor under the Uniform Fraudulent Transfer Act on the basis of a transfer made by an attorney-in-fact of a debtor. The few Connecticut trial courts to address similar issues have also followed this approach. See *Peterson* v. *Hume*, Superior Court, judicial district of Hartford, Docket No. CV-11-5035394-S (May 14, 2013) (56 Conn. L. Rptr. 133, 135–36) (relying on language originating in *Folmar & Associates, LLP*, and holding that "[CUFTA], by its plain language, does not apply to claims against third-party transferors" [internal quotation marks omitted]); *Coan* v. *Geddes*, Superior Court, judicial district of Waterbury, Docket No. CV-09-4020994 (January 30, 2013) (55 Conn. L. Rptr. 458, 462) (relying on *Folmar & Associates, LLP*, and holding that "definition of 'debtor' under [CUFTA] [cannot] be expanded to bring third-party transferors equitably owned by the debtor within its scope"); *Ferri* v. *Powell-Ferri*, judicial district of Middlesex, Docket No. CV-11-6006351-S (July 30, 2012) (54 Conn. L. Rptr. 414, 416) (Relying on *Folmar & Associates, LLP,* the trial court rejected the defendant's argument urging the court "to

adopt a more expansive view of 'debtor' to include anyone who was acting on the behalf of the debtor." The court ruled that the defendant had "not alleged that the debtor-beneficiary . . . participated in the claimed fraudulent transactions [executed by the trustees of two trusts in her husband's name]. Though the court agrees that there are strong policy arguments for extending the definition of a debtor under these circumstances, the court cannot ignore the plain language of the statute.").

In the leading out-of-state case, *Folmar & Associates, LLP* v. *Holberg*, supra, 776 So. 2d 116–18, the defendant was an attorney-in-fact for the debtor, her husband, and transferred funds in her husband's name to herself. The court rejected the creditor's claim, stating: "Even if we accepted [the creditor's] argument that [the third-party transferors] engaged in a conspiracy to defraud her, the Alabama Uniform Fraudulent Transfer Act, by its plain language, does not apply to claims against third-party transferors." (Internal quotation marks omitted.) Id., 118. "Even a liberal construction of the statute requires some demonstration that *the debtor* has put his property beyond the reach of a creditor." (Emphasis in original.) Id., 117. "While there may be valid policy arguments for extending the [a]ct to apply to transferors who are in control of the debtor's assets, it is not for the [j]udiciary to impose its view on the [l]egislature." (Internal quotation marks omitted.) Id., 118.

*Methodist Manor Health Center, Inc.* v. *Py*, supra, 307 Wis. 2d 501, involved facts similar to the present case. The debtor had unpaid bills from a nursing home. Id., 505. Under a power of attorney, the debtor's granddaughter had written checks and transferred the debtor's assets on her behalf, thereby preventing the nursing home from collecting those assets for itself. Id., 505–506. The court rejected the nursing home's argument that ruling against it would permit a debtor to avoid fraudulent transfer liability "by simply having the fraudulent transfers performed by an agent under a durable power of attorney." (Internal quotation marks omitted.) Id., 515. The court reasoned that "[i]f there are any perceived shortcomings in the statutes, and we do not conclude that there are in this instance . . . it is the function of the legislature, not this court, to resolve them." Id. Instead, the court acknowledged that strictly applying agency principles in this scenario would disfavor "unknowing and, in many cases, unsophisticated agents who were doing nothing more than attempting to assist an elderly parent or grandparent with their finances." (Internal quotation marks omitted.) Id., 517. Although the attorney-in-fact in that case was not also a transferee, as Stephen is here, the court's decision did not turn on that fact. It overtly relied on the plain language of the statute and the practical impact that strict application of agency law not included in the statute would have on unsophisticated agents.

In *Presbyterian Medical Center* v. *Budd*, supra, 832 A.2d 1066, again on facts similar to this case, the court rejected a nursing home's fraudulent transfer claim against a debtor's attorney-in-fact. Id., 1074. There, the debtor had unpaid bills that were owed to a nursing home, and, under a power of attorney for the debtor, the debtor's daughter transferred the debtor's assets to herself, thereby preventing the nursing home from collecting these assets for itself. Id., 1069. Citing no evidence that the debtor otherwise participated in the transfers at issue, the court rejected the nursing home's fraudulent transfer claim under Pennsylvania's version of the Uniform Fraudulent Transfer Act. Id., 1074. While it acknowledged that "under certain circumstances, an attorney-in-fact of a debtor may also qualify as a 'debtor' under [Pennsylvania's Uniform Fraudulent Transfer Act]," the court held that the nursing home had failed in that case to plead sufficient facts to establish such a connection. Id.[4]

This is not to say that under some circumstances, as the court in *Presbyterian Medical Center* suggests, courts might not consider a transfer made by a third party to be a transfer "made by a debtor . . . ." General Statutes § 52-552f (b). For example, while CUFTA requires a transfer to be "made by a debtor," it does not require that the debtor actually execute it himself. As stated previously, a "transfer" may be "indirect." See General Statutes § 52-552b (12). Thus, a debtor may execute a transfer in a variety of ways, including through the use of a third-party intermediary, although the statute is clear that *the debtor* must play a role.

To find liability based on a transfer executed by a third party, courts have required that the debtor participated in the transfer in some fashion, which the trial court found Helen did not do here. For example, a transfer made by a third party may be considered a transfer "made by a debtor" when the third party is the debtor's alter ego. In *Thompson Properties* v. *Birmingham Hide & Tallow Co.*, 839 So. 2d 629 (Ala. 2002), the court reasoned that the parties "could be considered 'one and the same'" under Alabama's version of the Uniform Fraudulent Transfer Act because the third party was subject to the debtor's liabilities and control. Id., 634; see also *Kraft Power Corp.* v. *Merrill*, 464 Mass. 145, 154–55, 981 N.E.2d 671 (2013); *Dwyer* v. *Meramec Venture Associates, L.L.C.*, 75 S.W.3d 291, 295 (Mo. App. 2002).[5]

A transfer made by a third party also may be considered a transfer "made by a debtor" if the debtor "directed or orchestrated" the transfer. *Hart* v. *Pugh*, 878 So. 2d 1150, 1157 (Ala. 2003). In *Hart*, the debtor violated the terms of a divorce decree. Id., 1152–53. The next week, he gave his mother a power of attorney, explicitly permitting her to sell his land on his behalf. Id. Later, the debtor's mother sold a parcel of his land.

Id. The debtor's former spouse argued that this was a transfer by a "debtor" because the debtor "directed" his mother to make the transfer. Id., 1156. Although the court ultimately rejected the claim because of insufficient evidence that the debtor had "participated in" his mother's decision to transfer the property, the court in *Hart* indicated that a transfer could indeed be attributed to a debtor if the debtor had "directed or orchestrated" a transfer made by a third party. Id., 1157. This court has relied on similar participation by the debtor before attributing a third-party transfer to a debtor. See *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 433, 429 A.2d 908 (1980) (debtor "caus[ed]" fraudulent conveyance, although wife actually executed it); see also *Virginia Corp.* v. *Galanis*, 223 Conn. 436, 445 n.12, 613 A.2d 274 (1992) (debtor fraudulently conveyed property by "direct[ing]" the conveyance, even though he did not "actually convey" it).

Bankruptcy law follows similar rules. Courts applying an analogous provision of the federal Bankruptcy Code attribute an agent's conduct to a principal only in limited circumstances. Under 11 U.S.C. § 548, an agent's actual fraudulent intent may be imputed to a principal; *In re Tribune Co. Fraudulent Conveyance Litigation*, No. 11-md-2296 (RJS), 2017 WL 82391, *5 (S.D.N.Y. January 6, 2017); but only if the agent is also the transferee and "in a position to dominate or control" the principal. *In re Elrod Holdings Corp.*, 421 B.R. 700, 711 (Bankr. D. Del. 2010). This is a high standard: "[V]icarious intent is an extreme situation that is dependent upon nearly total control of a debtor by a transferee." (Internal quotation marks omitted.) Id. It requires "formal, legal control as well as functional control." Id., 712. Thus, imputed intent cases almost exclusively arise in the corporate context, "typically involv[ing] sole shareholders of the transferor, with complete control of the transferor, transferring assets to themselves as transferee." Id. Although intertwined with general agency principles, the rule is driven by policies inapplicable to the vast majority of individual debtors: "With respect to individuals, section 548 (a) (1) (A)'s application is obvious: the inquiry is into the actual intent held by the flesh-and-blood individual. With a corporation or other juridical entity, the inquiry is blurred: which of the corporation's officers or directors matter? What if not all of the officers and directors agree? . . . '[A] corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business.'" R. Levin & H. Sommer, 5 Collier on Bankruptcy ¶ 548.04 (16th Ed. 2018) § 548 (a) (1) (A) [1] [iv], pp. 548-65 and 548-66 (quoting *In re Personal & Business Ins. Agency*, 334 F.3d 239, 243 [3d Cir. 2003]).[6]

Applying these principles to the present case, I would not conclude on this record that the trial court improp-

erly determined that CUFTA did not reach the transfers Stephen made exercising his power of attorney. As the trial court found: "[A]ll of the transfers at issue were made by Stephen McGee, under a power of attorney from his mother. None were made by Helen McGee." Therefore, Stephen was not the "debtor" inasmuch as he was not "liable on a claim" to the plaintiff. Additionally, even if we were to construe CUFTA under some set of circumstances to reach transfers made by a third party at the behest of the debtor, as have some courts discussed previously, the trial court observed that "the plaintiff does not allege, and the evidence does not show, that Helen McGee participated in any fashion in the claimed fraudulent transfers . . . ." Stephen was not acting as Helen's alter ego, nor did Helen "direct or orchestrate" or "cause" Stephen's transfers in such a way that the court could attribute the transfers to her. Because the transfers at issue in this case were not "made by a debtor," in my view, the plaintiff failed to make out a claim that Stephen was liable under CUFTA.[7]

As construed by the majority, Stephen's transfers are attributed to Helen regardless of whether she participated in (or even knew about) them. Under General Statutes § 52-552k, the supplementary provisions of CUFTA on which the majority relies: "the principles of law and equity, including . . . the law relating to principal and agent," supplement CUFTA, "[u]nless displaced" by other provisions of the act. In this light, the majority relies on the rule that a principal is presumptively bound by the acts of an attorney-in-fact. *Kindred Nursing Centers East, LLC* v. *Morin*, 125 Conn. App. 165, 167, 7 A.3d 919 (2010). But strict application of agency principles is inconsistent with the limited reach of the language in CUFTA, which states that the transfer must be "made by a debtor"; General Statutes § 52-552f (b); as well as with the general approach to third-party transfers this court and others use, and with the approach that every court to consider the issue has taken with respect to attorneys-in-fact. In my view, even under § 52-552k, when a court has found that the principal did not otherwise participate in the transfer, the phrase, "made by a debtor," "displace[s]" agency law to the extent that a principal is automatically held liable for a transfer by its agent.

Just because CUFTA does not provide a remedy does not mean one is not available, though. For example, a nursing facility may require "an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract . . . to provide payment from the resident's income or resources for such care." 42 U.S.C. § 1396r (c) (5) (B) (ii) (2012); see, e.g., *Sunrise Healthcare Corp.* v. *Azarigian*, 76 Conn. App. 800, 810, 821 A.2d 835 (2003) ("if the [agent] acted in breach of the contract by not using [the patient's] assets as the contract required, then [the agent] is responsible for reimbursing the [nursing

home]"). In fact, the plaintiff's "Resident Admissions Agreement" contemplates a "responsible party" who agrees to undertake certain duties on behalf of "the resident" and bears personal financial liability for failure to do so. Stephen was not named a responsible party in the agreement. More generally, a plaintiff in a breach of contract case can also obtain a prejudgment remedy on a showing of probable cause, thereby preserving the defendant's assets before any transfer to a third party. See General Statutes §§ 52-278a and 52-278d. Or a breaching principal might have a cause of action against its attorney-in-fact for improperly transferring assets. See, e.g., *Kindred Nursing Centers East, LLC* v. *Morin*, supra, 125 Conn. App. 173.

Therefore, I respectfully concur in part and dissent in part.

[1] For this reason, I do not think it is fair to blame the trial court for addressing an essential element of the plaintiff's CUFTA claim that the plaintiff had failed to address. Nothing the plaintiff ever submitted to the trial court cited General Statutes § 52-552k, on which the majority principally relies. The plaintiff's complaint based the CUFTA claim on General Statutes § 52-552h, which is merely a remedial provision. The plaintiff's pretrial and posttrial briefs reference General Statutes § 52-552 only generally—a statute that was repealed in 1991—without citation to a specific provision of CUFTA. After pretrial briefing, a trial and posttrial briefing, the trial court issued an order indicating that it was still "unclear" about "which specific provision" of CUFTA "the plaintiff claims the defendant Stephen McGee violated." It therefore ordered the plaintiff to file a supplemental brief clarifying its position. The plaintiff complied, and for the first time, cited General Statutes §§ 52-552e and 52-552f, which are CUFTA's provisions on liability. In its motion to reargue to the trial court, the plaintiff again failed to mention any provisions of CUFTA.

Nor in its briefing to this court did the plaintiff mention § 52-552k. It did, however, mention the concept of agency, asking this court to accept its argument under the plain error doctrine. See Practice Book § 60-5. I take its invocation of the plain error doctrine, which provides an avenue for reviewing *unpreserved* claims, as a concession that this claim was not preserved. See *State* v. *Darryl W.*, 303 Conn. 353, 372, 33 A.3d 239 (2012) (plain error is a "doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal" of a trial court's judgment [internal quotation marks omitted]).

The majority does not explain how this legal theory, never raised during trial, qualifies for plain error review. See id., 373 ("party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal" [internal quotation marks omitted]). As I will discuss, the position the majority adopts today is hardly "obvious and indisputable." It is at best a minority view.

Regardless, the majority is entitled to reach this issue if it has concluded that the parties have had an opportunity to brief the issue. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 161–62, 84 A.3d 840 (2014); id., 162 ("if the reviewing court would have the discretion to review the issue if raised by a party . . . the court may raise the claim sua sponte, as long as it provides an opportunity for all parties to be heard on the issue"). However, it is at least ironic (and in my view unfair) to scold the trial court for not ordering yet another round of supplemental briefing, given that the trial court provided the plaintiff with ample briefing opportunities; the plaintiff only belatedly landed on a theory of agency before this court, and has still never cited the statute the majority holds to govern.

[2] General Statutes § 52-552f provides: "(a) *A transfer made* or obligation incurred *by a debtor* is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent

at that time or the debtor became insolvent as a result of the transfer or obligation.

"(b) *A transfer made by a debtor* is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent." (Emphasis added.)

General Statutes § 52-552e provides in relevant part: "(a) *A transfer made or obligation incurred by a debtor* is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation . . . ." (Emphasis added.)

[3] Although in construing legislative language it is sometimes useful to draw on related or analogous statutes, one statutory scheme that the majority relies on as analogous, the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq., contains a specific legislative admonition, missing in CUFTA, to "liberally [construe]" that title. General Statutes § 42a-1-103 (a). This can perhaps be explained by the fact that the UCC governs all commercial transactions while CUFTA creates a cause of action for fraud.

[4] As the majority admits, the authorities it relies on reach their results "without any analysis . . . ." The majority "surmise[s]" that "the parties in these cases were operating under the same logical assumption reflected in the parties' pleadings in the present case, that the act of the agent would be imputed to the principal as a matter of law."

In my view, this assumption is a logical stretch, both in the present case and in the cases "without any analysis . . . ." In the present case, the plaintiff's complaint never mentions the terms agent, principal or impute. In fact, as discussed previously, the plaintiff never mentioned principles of agency until its brief before this court, in which it invoked the plain error doctrine; see Practice Book § 60-5; and it has never mentioned the supplementary provisions of CUFTA, General Statutes § 52-552k. See footnote 1 of this concurring and dissenting opinion. Given that the cases that provide any analysis whatsoever (*Folmar & Associates, LLP*, *Methodist Manor Health Center, Inc.*, and *Presbyterian Medical Center*, as well as Connecticut trial court cases) go against the plaintiff's and the majority's position, and would have easily been found if searched for, the better explanation in the out-of-state cases with no analysis is that the parties simply did not consider the issue. Although the majority is perhaps free to arrive at the conclusion it does today, it does so against the weight of considered authority and on a theory the plaintiff did not pursue before the trial court.

[5] At the time Helen granted Stephen a power of attorney, Connecticut's statutory short form power of attorney provided that when the principal "confer[s] general authority," it "shall be construed to mean that the principal authorizes the agent to act as an alter ego of the principal with respect to any matters and affairs not enumerated" in the power of attorney agreement. General Statutes (Rev. to 2015) § 1-55. The power of attorney agreement used by the parties in this case is not in the record, however. Therefore, it is unclear whether Stephen executed the transfers pursuant to a general authority, and, if so, whether Helen authorized him to act as her alter ego in such cases.

[6] The majority argues that courts in bankruptcy cases simply presume that the conduct of a debtor's agent is attributable to a debtor and instead focus only on whether the intent of the agent is attributable to the debtor. But some courts do, in fact, analyze whether conduct was attributable to the debtor, before addressing intent. E.g., *In re Maletta*, 159 B.R. 108, 116 (Bankr. D. Conn. 1993) ("The transfers of the $83,600 bonus funds in February and March of 1990 were within one year of the commencement of this case. . . . [T]*hose transfers were made by the defendant or authorized by him* . . . ." [Citation omitted; emphasis added.]).

[7] The plaintiff argues that Stephen admitted in his answer that Helen transferred the assets and that this admission bound the trial court. But this portion of Stephen's answer can neither be construed as an acknowledgement that Helen actually transferred the funds herself nor that Stephen's transfer of the funds was attributable, as a matter of law, to Helen. The first interpretation is contrary to the record, and the trial court therefore was entitled to find to the contrary. "[A] court may be justified in deviating from any such admission if [it is] unsupported by the underlying facts in evidence." *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 248, 492 A.2d 164 (1985).

No evidence suggests that Helen actually made these transfers herself, and the plaintiff did not argue as much. The second interpretation suggests a legal conclusion, and thus, did not bind the trial court in its factual findings. See *Borrelli* v. *Zoning Board of Appeals*, 106 Conn. App. 266, 271, 941 A.2d 966 (2008) ("[a]dmissions, whether judicial or evidentiary, are concessions of fact, not concessions of law"). Whether a transfer made by a third party is attributable to a debtor is, at least in part, a question of law.

---