******************************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopin-
ion motions and petitions for certification is the "offi-
cially released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports, the latest
version is to be considered authoritative.

The syllabus and procedural history accompanying
an opinion that appear in the Connecticut Law Jour-
nal and subsequently in the Connecticut Reports or
Connecticut Appellate Reports are copyrighted by the
Secretary of the State, State of Connecticut, and may
not be reproduced or distributed without the express
written permission of the Commission on Official Legal
Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROCCO ORLANDO *v.* ERNEST LIBURD
## (SC 21062)

McDonald, D'Auria, Ecker, Alexander, Dannehy and Bright, Js.

*Syllabus*

The plaintiff appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed the trial court's partial judgment in favor of N Co., the plaintiff's automobile insurer. The plaintiff had brought an action against the defendant L, seeking damages for, inter alia, diminution of value and loss of use of his vehicle in connection with an automobile accident allegedly caused by L's negligence. Thereafter, L impleaded N Co. and alleged that his insurer, S Co., had tendered to N Co. $25,000, which was the full liability coverage limit for property damage under L's insurance policy, based on N Co.'s alleged misrepresentation that the plaintiff had been made whole. The plaintiff subsequently filed an amended complaint, alleging, inter alia, that N Co. was unjustly enriched when it prematurely accepted the $25,000 from S Co. and thereby reduced the amount of funds that otherwise would have been available to indemnify L in the plaintiff's negligence action, in violation of the make whole doctrine, which restricts an insurer's ability to enforce its right to subrogation until after the insured has been fully compensated, or made whole, for the insured's loss. The trial court ultimately dismissed the plaintiff's unjust enrichment claim against N Co. as not ripe for adjudication. In affirming the trial court's partial judgment of dismissal, the Appellate Court concluded that the unjust enrichment claim was not ripe until the plaintiff first obtained a judgment against L because that claim was otherwise contingent on whether and to what extent the plaintiff could recover from L and on L's ability to satisfy the hypothetical judgment. On appeal to this court, the plaintiff claimed, inter alia, that his unjust enrichment claim was ripe for adjudication. *Held*:

The Appellate Court improperly upheld the trial court's dismissal of the plaintiff's unjust enrichment claim on ripeness grounds, and, accordingly, this court reversed the Appellate Court's judgment, directed that court to reverse the trial court's partial judgment in favor of N Co., and remanded the case for further proceedings.

The Appellate Court incorrectly determined that the plaintiff must obtain a judgment against L and exhaust all collection efforts before his unjust enrichment claim against N Co. becomes ripe, as a cause of action premised on an insurer's premature subrogation in violation of the make whole doctrine is ripe for adjudication before an insured obtains a judgment against the alleged tortfeasor.

Under the circumstances of the present case, in which L's liability has already been accepted by his insurer, the diminution in value and loss of

use damages claimed by the plaintiff have been recognized, and N Co. has exhausted all of the coverage that might have been available to compensate the plaintiff for those damages under L's insurance policy, the plaintiff's unjust enrichment claim was ripe for adjudication, and only the amount of the plaintiff's damages for loss of use and diminution in value of his vehicle was in question.

Moreover, whether the plaintiff suffered a cognizable injury was not, contrary to the Appellate Court's determination, contingent on whether and to what extent he could recover against L and L's ability to satisfy such a judgment because the precise nature of the injury that the plaintiff allegedly sustained was the violation of his priority right to L's insurance coverage, which, far from being either contingent or hypothetical, already had occurred.

Furthermore, N Co.'s enforcement of its right to subrogation precluded the plaintiff from accessing the liability coverage available under L's insurance policy to compensate the plaintiff for losses not covered by his policy with N Co., and such enforcement improperly transferred the risk of not being made whole from N Co. to the plaintiff.

To the extent the trial court determined that the plaintiff's unjust enrichment claim was not ripe because the plaintiff failed to allege the amount of his claimed damages, the amount subrogated by his insurer, or the limits of L's coverage, this court also rejected that reasoning.

It was undisputed that the plaintiff's alleged damages were in excess of L's policy limits, insofar as N Co.'s recovery of $25,000 from S Co. had exhausted the coverage limit for property damage under L's insurance policy and the plaintiff alleged that he had suffered certain losses for which he had not yet been compensated, and those allegations, coupled with the reasonable inference that N Co.'s subrogation weakened the plaintiff's litigation position against L, were sufficient to establish a substantial risk that he would not be made whole.

The Appellate Court's judgment could not be affirmed on the alternative ground that the plaintiff lacked standing to assert his unjust enrichment claim, as the plaintiff sufficiently alleged a specific, personal and legal interest in N Co.'s subrogation recovery under the make whole doctrine and that there was a possibility that N Co.'s enforcement of its subrogation right had adversely affected that interest.

Argued September 22, 2025—officially released January 6, 2026

*Procedural History*

Action to recover damages for the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the

court, *Cobb, J.,* granted the defendant's motion to implead Nationwide Mutual Insurance Company as a third-party defendant; thereafter, the plaintiff filed an amended complaint; subsequently, the court, *Sicilian, J.,* dismissed counts three and four of the amended complaint, and rendered partial judgment dismissing those counts, from which the plaintiff appealed to the Appellate Court, *Alvord, Suarez* and *Westbrook, Js.,* which affirmed the trial court's partial judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings.*

*Matthew J. Forrest,* with whom was *James R. Brakebill,* for the appellant (plaintiff).

*Andrew P. Barsom,* with whom, on the brief, was *Robert D. Laurie,* for the appellee (third-party defendant).

*Dana M. Hrelic* and *Meagan A. Cauda* filed a brief for the Insurance Association of Connecticut et al. as amici curiae.

*Opinion*

BRIGHT, J. In the absence of express contractual, statutory, or regulatory language to the contrary, the make whole doctrine operates as "a default rule" in Connecticut insurance contracts and restricts the enforcement of an insurer's subrogation rights until after its insured has been fully compensated for his loss. *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.,* 309 Conn. 449, 458, 72 A.3d 36 (2013); see id., 456–58. The principal issue in this certified appeal is whether the trial court properly dismissed as unripe the unjust enrichment claim asserted by the plaintiff, Rocco Orlando, against his automobile insurer, the third-party defendant, Nationwide Mutual Insurance Company (Nationwide). The unjust enrichment claim is based on Nationwide's allegedly wrongful enforce-

ment of its subrogation rights against the defendant, Ernest Liburd, prior to the adjudication of the plaintiff's negligence action against Liburd.[1] The trial court concluded, and the Appellate Court agreed, that the plaintiff's claim was not ripe for adjudication under the make whole doctrine until the plaintiff first obtained a judgment against Liburd. See *Orlando* v. *Liburd*, 227 Conn. App. 883, 885, 891–95, 324 A.3d 224 (2024). On appeal, the plaintiff contends that his claim is ripe for adjudication because Nationwide's premature subrogation constituted a cognizable legal injury, despite any uncertainty as to the amount of his damages. In addition to arguing that the Appellate Court correctly concluded that the plaintiff's claim is not ripe, Nationwide claims, as an alternative ground for affirming the Appellate Court's judgment, that the plaintiff also lacks standing to assert it. We agree with the plaintiff that the matter is ripe for adjudication and conclude that he has standing to pursue the claim. We therefore reverse the judgment of the Appellate Court.

The allegations of the complaint, together with undisputed facts as evidenced in the record, establish the following factual and procedural background. In November, 2018, the plaintiff's vehicle was involved in a collision with Liburd's vehicle. In September, 2019, the plaintiff brought the underlying negligence action against Liburd, seeking damages for, among other things, the diminished value of his vehicle and out-of-pocket expenses for a rental car. Liburd impleaded Nationwide as a third-party defendant and filed a third-party complaint against it, alleging that Liburd's insurer, State Farm Mutual Insurance Company (State Farm), had tendered his policy limit to Nationwide based on Nationwide's alleged misrepresentation that the plaintiff had been made whole. The plaintiff, in turn, amended his com-

---

[1] Liburd did not participate in the plaintiff's appeal in the Appellate Court, and he has not participated in this certified appeal.

plaint several times to add three counts against Nationwide, which essentially repeated the allegations in Liburd's third-party complaint.

In the operative complaint, the plaintiff asserted a negligence cause of action against Liburd and a claim for unjust enrichment against Nationwide.[2] As to Nationwide, the plaintiff alleged that the plaintiff "has conferred a benefit [on] Nationwide . . . by paying monthly premiums for insurance with the expectation that Nationwide would not pursue subrogation unless and until the plaintiff had been made whole, as required under the make whole doctrine adopted in *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, [supra, 309 Conn. 458]. . . . Nationwide, in taking the amount tendered by [State Farm], has reduced the amount available to indemnify [Liburd] and has been unjustly enriched to the detriment of its own insured, the plaintiff. . . . Nationwide, in pursuing its subrogation rights without regard as to whether the plaintiff had been made whole and without itself paying the plaintiff for damages claimed in this complaint, unjustly failed to compensate the plaintiff in exchange for the benefits it received from the plaintiff. . . . If . . . Liburd should be held liable to pay damages to the plaintiff based on the claims alleged in the plaintiff's complaint, then the plaintiff is entitled to recover from Nationwide for all sums adjudged against . . . Liburd . . . up to the amount previously tendered to Nationwide by . . . State Farm."

Nationwide moved to strike the unjust enrichment count on the ground that it failed to state a claim on which relief could be granted "due to the lack of any benefit alleged to have been received by Nationwide

---

[2] The plaintiff asserted two additional counts against Nationwide, which were stricken by the trial court. After the plaintiff failed to replead, the court rendered judgment for Nationwide on the stricken counts, and the plaintiff has not challenged the judgment as to those two counts.

and the lack of any detriment to the plaintiff." After hearing argument on that motion, the trial court, sua sponte, ordered the parties to file briefs addressing whether the unjust enrichment count against Nationwide was ripe given the plaintiff's allegation that Nationwide's liability is contingent on Liburd being found liable for the plaintiff's claimed damages. In its responsive memorandum of law, Nationwide contended both that the plaintiff lacked standing to assert the unjust enrichment claim against it and that such a claim would not be ripe until Liburd is found liable for the plaintiff's claimed damages. In response, the plaintiff argued that his unjust enrichment claim was ripe because the operative complaint alleged that Nationwide already had infringed on his right to be made whole by reducing the funds available to indemnify Liburd. In support of his position, the plaintiff relied on *James Lee Construction, Inc.* v. *Government Employees Ins. Co.*, 478 F. Supp. 3d 1057, 1061–62 (D. Mont. 2020), in which the District Court concluded that two insureds had standing to assert wrongful subrogation claims against their automobile liability insurer. The plaintiff also appended to his brief copies of two emails sent to the plaintiff's counsel by Liburd's attorneys. The first email included an image of a check in the amount of $25,000 from State Farm payable to Nationwide. The email stated: "Please see the attached release and settlement check for the [property damage] limits of [$25,000] following the intracompany arbitration process." In the second email, Liburd's attorney wrote: "I know Nationwide is fighting everything tooth and nail on this one, but have you had any discussions with [Nationwide] about resolving this case? I think the last time we spoke you indicated that your plan was to . . . make a claim for a portion of the benefits State Farm paid to Nationwide. As you know, we paid the policy limit on this one."

The trial court concluded that the plaintiff's claim for unjust enrichment was not ripe for adjudication

and dismissed that count for lack of subject matter jurisdiction. The court relied on *Johnson* v. *State Farm Mutual Automobile Ins. Co.*, Docket No. CV 20-55-M-DWM, 2020 WL 4784692, *2 (D. Mont. August 18, 2020), in which the District Court concluded that two insureds lacked standing to assert their wrongful subrogation claims against their insurer because their complaint failed to allege sufficient facts to establish that their insurer's subrogation harmed their ability to be made whole. Consistent with the reasoning in *Johnson*, the trial court in the present case observed that the plaintiff's failure to "allege the amount of his claimed damages, the amount subrogated by his insurer, or the limits of Liburd's coverage" was fatal to his unjust enrichment claim.[3]

The plaintiff appealed from the trial court's partial judgment of dismissal to the Appellate Court, contending that his claim was ripe for adjudication because he had suffered a cognizable legal injury when Nationwide infringed on his priority right under the make whole doctrine. See *Orlando* v. *Liburd*, supra, 227 Conn. App. 891. The Appellate Court disagreed with the plaintiff's ripeness claim, relying heavily on its prior decision in *Cadle Co.* v. *D'Addario*, 111 Conn. App. 80, 957 A.2d 536 (2008). See *Orlando* v. *Liburd*, supra, 892–93. The Appellate Court determined that "the plaintiff's unjust enrichment claim against Nationwide is contingent on a final determination of his claims against Liburd and, if the plaintiff is awarded damages, the absence of sufficient funds from Liburd or his insurer to satisfy the plaintiff's claim. Even if, unlike in *Cadle Co.*, the plaintiff's priority rights may already be deter-

---

[3] The plaintiff filed a motion requesting that the trial court clarify whether the unjust enrichment count was dismissed without prejudice such that he could replead to cure the pleading defects identified by the court. The court issued an order denying the motion, stating that it "decline[d] to issue an advisory opinion."

mined under the make whole doctrine, the plaintiff's claim against Nationwide is still contingent [on] whether and to what extent the plaintiff can recover against Liburd as well as whether Liburd will be able to satisfy the hypothetical judgment." (Footnote omitted.) Id., 893. The court observed that "this case is distinguishable from cases in which only the *amount* of damages was in question"; (emphasis in original) id.; because "it is impossible to ascertain whether the plaintiff will sustain any compensatory injury as a result of Nationwide's alleged misconduct." Id., 894.

The Appellate Court rejected the plaintiff's reliance on *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 604, 239 A.3d 1162 (2020), in which this court concluded that a trial court's priority determination in connection with a judgment of foreclosure by sale had established the defendants' "lack of priority right vis-à-vis the plaintiff" such that the defendants' loss of priority was "neither hypothetical nor contingent on an event that may never transpire." See *Orlando* v. *Liburd*, supra, 227 Conn. App. 894–95. The Appellate Court determined that *Saunders* was distinguishable from the present case because, "unlike the foreclosure action in *Saunders*, the [trial] court [in the present action] did not conclusively decide which party has priority rights to Liburd's insurance policy. Nor is the dispute over priority rights essential to the determination of the plaintiff's negligence claim against Liburd. To the contrary, determination of the plaintiff's claim against Liburd is necessary before the court can ascertain whether Nationwide has been unjustly enriched by subrogation." Id. In addition, the Appellate Court rejected the trial court's reasoning regarding the pleading deficiencies, explaining that, "[r]egardless of the amount of Liburd's insurance policy and the amount Liburd's insurer paid to Nationwide . . . the plaintiff's claim against Nationwide is wholly contingent [on] the [plaintiff's] obtaining a judgment

against Liburd and [Liburd's] being unable to satisfy the hypothetical judgment." Id., 896. Accordingly, the Appellate Court affirmed the trial court's partial judgment. Id., 897.

We granted certification to determine whether "the Appellate Court correctly conclude[d] that the trial court had properly dismissed the plaintiff's unjust enrichment claim against [Nationwide], based on [Nationwide's] allegedly wrongful enforcement of its subrogation rights against [State Farm], on the ground that the plaintiff's claim was not ripe for adjudication under the make whole doctrine until the plaintiff first obtained a judgment in his pending action against [Liburd] . . . ." *Orlando* v. *Liburd*, 350 Conn. 918, 919, 325 A.3d 216 (2024).

On appeal, the plaintiff claims that the Appellate Court incorrectly concluded that his unjust enrichment claim is contingent on a judgment against Liburd and, therefore, not ripe for adjudication under the make whole doctrine. Nationwide maintains that the plaintiff's claim is not ripe and further contends, as an alternative ground for affirmance, that the plaintiff lacks standing to assert his unjust enrichment claim based on the factual allegations in the operative complaint. We agree with the plaintiff that a cause of action premised on an insurer's premature subrogation in violation of the make whole doctrine is ripe for adjudication before an insured obtains a judgment against the tortfeasor, and we reject Nationwide's alternative ground for affirmance.

As a preliminary matter, we set forth the applicable standard of review and general principles regarding justiciability. An issue of justiciability presents a question of law subject to plenary review. See, e.g., *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86, 952 A.2d 1 (2008). In an appeal from a judgment granting a pretrial motion to dismiss for lack of subject matter jurisdiction,

we "take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Wisniewski* v. *Palermino*, 351 Conn. 390, 400, 330 A.3d 857 (2025). When, as in the present case, "the complaint is supplemented by undisputed facts . . . [a] court . . . may consider [the] supplementary undisputed facts" in resolving the jurisdictional issue. (Internal quotation marks omitted.) *Giannoni* v. *Commissioner of Transportation*, 322 Conn. 344, 349, 141 A.3d 784 (2016).

"Justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 523, 187 A.3d 1154 (2018). Standing and ripeness "are gatekeeper doctrines, each of which regulates a different dimension of entrance to the . . . courts. The law of standing considers whether the plaintiff is the proper person to assert the claim, [whereas] the law of ripeness ensures that the plaintiff has not asserted the claim too early . . . ." (Internal quotation marks omitted.) *Schoenhorn* v. *Moss*, 347 Conn. 501, 521, 298 A.3d 236 (2023) (*Ecker, J.*, concurring in the judgment). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) Id., 507.

"In deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination

regarding [the complaint's] merits. Rather, we consider only whether the matter in controversy [is] capable of being adjudicated by judicial power according to the aforestated well established principles." (Internal quotation marks omitted.) Id., 508; see also *Esposito* v. *Specyalski*, 268 Conn. 336, 350, 844 A.2d 211 (2004).

With these principles in mind, we turn to the certified issue.

I

The plaintiff maintains that his claim for unjust enrichment is ripe for adjudication because the legal injury in this case was the violation of his priority right, and, although "the extent of his damages [is] uncertain, the fact [that] he sustained an injury is clear." He argues that the make whole doctrine affords him "a priority right" to the funds available under Liburd's insurance policy and that Nationwide violated that right by accepting the amount tendered by State Farm without confirming that the plaintiff had been fully compensated for his loss. For its part, Nationwide argues, among other things, that "[t]he plaintiff's 'priority right' does not become vested until . . . there has been a determination of the amount of the extracontractual, additional damages caused by [Liburd], which, in turn, supplies the requisite factual basis for any unjust enrichment claim against Nationwide. It is only upon such a determination that the legal elements of ripeness for the [plaintiff's unjust enrichment] claim . . . can be met . . . ." We agree with the plaintiff.

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . [I]n determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent [on] some event that has not and

indeed may never transpire." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 86–87. "Pursuant to Connecticut's ripeness jurisprudence, as long as it is clear that a plaintiff has suffered an injury sufficient to give rise to the cause of action alleged, a lack of certainty as to the precise scope of damages will not prevent the claim from being justiciable." Id., 87–88.

The following principles regarding subrogation and the make whole doctrine inform our analysis of the ripeness issue in the present case. The doctrine of equitable subrogation[4] "allows one party, such as an insurer (known as the subrogee), to assert the legal rights or claims of another person, such as an insured (known as the subrogor), against a third party, for example, a tortfeasor, when the subrogee has indemnified the subrogor for a loss caused by the third-party tortfeasor." *Pacific Ins. Co., Ltd.* v. *Champion Steel, LLC*, 323 Conn. 254, 261, 146 A.3d 975 (2016). If an insured recovers damages from the tortfeasor, the same equitable principles allow an insurer to seek reimbursement from its insured to prevent a double recovery. See id., 262; see also *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 456; 2 A. Windt, Insurance Claims and Disputes: Representation of Insurance Companies and Insureds (4th Ed. 2001) § 10:5, pp. 205–

---

[4] "[I]nsurers that are obligated by a preexisting contract to pay the losses of an insured proceed in a subsequent action against the responsible party under the theory of equitable subrogation, and not conventional subrogation. . . . In such cases, in the absence of express contractual language indicating an intention to depart from the default rules, [t]he contract . . . is not the source of the right, but rather is a reference to those rights that may exist at law or in equity. . . . Thus, although a right of true [equitable] subrogation may be provided for in a contract . . . the exercise of the right will . . . have its basis in general principles of equity rather than in the contract, which will be treated as being merely a declaration of principles of law already existing." (Citations omitted; internal quotation marks omitted.) *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 455–56.

11. Subrogation against the tortfeasor serves "to accomplish justice" by compelling payment from the person who is responsible for the loss; (internal quotation marks omitted) *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 456; whereas reimbursement prevents the insured from being compensated twice—first by his insurer and again by the tortfeasor—for the same loss. "[S]ubrogation allows an insurer to assert the rights of the insured against a third party; reimbursement, on the other hand, allows the insurer to recover payments made on behalf of the insured directly from the insured." *Health Cost Controls, Inc.* v. *Gifford*, 108 S.W.3d 227, 230 (Tenn. 2003).

By way of example, if a person's home is destroyed in a fire and his insurance company pays to restore the home, the insurance company has an equitable right of subrogation to pursue a claim against the third party who is responsible for causing the fire to recover the amount it paid to its insured. If the insured collects payments from his insurance company for his losses and also recovers damages for the same losses from the third party who is responsible for causing the fire, the insurance company can seek reimbursement from the insured for any duplicative amount it paid to the insured.

When an insured's total loss exceeds the amount paid by his insurer, disputes often arise regarding apportionment of any recovery obtained from or paid on behalf of the third-party tortfeasor. "When the amount recoverable from the [tortfeasor] is insufficient to satisfy both the [uninsured] loss sustained by the insured and the amount the insurer [paid] on the claim . . . [subrogation] may lead to inequitable results. . . . The make whole doctrine addresses this concern by restricting the enforcement of an insurer's subrogation rights until after the insured has been fully compensated for her injuries, that is . . . made whole." (Citation omitted;

internal quotation marks omitted.) *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 456–57; see also 2 A. Windt, supra, § 10:6, pp. 211–12 ("[the] general rule" that insurer has no right to subrogation until insured is made whole "is true even if the insurer is liable for only a part of the loss and pays its entire obligation"). Under the make whole doctrine, an insured is deemed "fully compensated . . . when [he] has recovered [his] legally recoverable tort damages." *World Trade Center Properties, LLC* v. *QBE International Ins. Ltd.*, 627 Fed. Appx. 10, 13 (2d Cir. 2015).

In *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 449, this court formally adopted the make whole doctrine "as a default rule in Connecticut insurance contracts"; id., 458; but we noted that "parties are free to provide differently in their contract, provided they do so expressly." Id., 469 n.9. In addition, we held that the doctrine does not apply to deductibles that the insured is obligated to pay under the insurance policy and, therefore, that an insured is fully compensated for his losses when he recovers the full amount of his loss, less any deductible.[5] Id., 468–69.

---

[5] Nationwide, supported by the amici curiae, the Insurance Association of Connecticut and the American Property Casualty Insurance Association, contends that the make whole doctrine, as implicated in the present case, "is inapplicable to extracontractual, subjective claims of loss or damages" that a tortfeasor may be legally obligated to pay, such as the plaintiff's claimed damages for diminution in value and loss of use. According to Nationwide, the make whole doctrine does not apply to "extracontractual claims of loss," i.e., losses that are not covered under the plaintiff's insurance policy with Nationwide, for the same reason that this court held that the doctrine does not apply to deductibles. We disagree.

In the present context, limiting the application of the make whole doctrine to an injured insured's covered losses would, in effect, eliminate the doctrine, which is implicated only when an insured's total loss *exceeds the amount paid by his insurer*. If the doctrine applied to covered losses only, then an insured always would be made whole by the insurer's indemnity payment under the policy. Furthermore, our reasoning in *Fireman's Fund Ins. Co.* regarding deductibles contradicts Nationwide's suggested limitation, as we explained that "the deductible is, in effect, akin to a primary layer of self-

Thus, in Connecticut, the make whole doctrine applies only when (1) the insured's total loss exceeds the amount paid by his insurer, (2) the available sources of recovery are insufficient to fully compensate both the insured and the insurer, and (3) the insurance policy is silent as to the parties' intent to depart from the default rule. See id., 458 (when available funds are sufficient to satisfy all claims, it is "unnecessary to determine priority between the insurer and the insured"); see also *Paulson* v. *Allstate Ins. Co.*, 263 Wis. 2d 520, 532, 665 N.W.2d 744 (2003) (make whole doctrine applies when there is "[t]he specter of an insurer competing with the insured for a limited amount of funds").

The viability of the plaintiff's unjust enrichment claim depends on the proper application of the make whole doctrine under the present circumstances. To prevail on a claim for unjust enrichment, a plaintiff "must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment. . . . This doctrine is based [on] the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated." (Internal quotation marks omitted.) *Horner* v. *Bagnell*, 324 Conn. 695, 708, 154 A.3d 975 (2017).

Although an unjust enrichment claim often involves "a plaintiff's direct transfer of benefits to a defendant,

insurance underlying the [liability insurance] policy, which policy is, as a practical matter, the equivalent of an excess policy. . . . [W]hen there is a recovery, the excess level of insurance is entitled to recover before a lower level of insurance/deductible can recover. . . . By the same token, *the amount of the insured's loss in excess of the insurance policy must be reimbursed before the insurer is reimbursed by virtue of the same principle*: reimbursements go to the highest level of excess and work their way down to the lowest level." (Emphasis added; internal quotation marks omitted.) *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 468.

it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit. . . . In an indirect benefit scenario, the plaintiff must prove that [he] has a better legal or equitable right to the disputed benefit than the defendant. . . . This standard is highly restrictive. . . . [T]he plaintiff must prove that [his] right is both recognized, and accorded priority over the interest of the defendant, under the law of the jurisdiction." (Citations omitted; internal quotation marks omitted.) *Geriatrics, Inc.* v. *McGee*, 332 Conn. 1, 25, 208 A.3d 1197 (2019).

The operative complaint is not a model of clarity, but the plaintiff invokes the make whole doctrine as the basis for his unjust enrichment claim. Construing the operative complaint broadly, as we must when reviewing a dismissal on jurisdictional grounds, we note that the plaintiff alleges that the make whole doctrine was violated when State Farm conveyed a $25,000 benefit to Nationwide and Nationwide accepted that benefit before it was determined that the plaintiff had been fully compensated for the losses not covered by Nationwide (uninsured losses), and that Nationwide's retention of that benefit constitutes unjust enrichment because the plaintiff has a superior equitable entitlement to that benefit pursuant to the make whole doctrine. In addition, it is undisputed that State Farm paid Nationwide $25,000, which exhausted the limits of the liability coverage for property damage under Liburd's insurance policy.

We agree with the plaintiff's argument that Nationwide's enforcement of its subrogation right deprived him of access to the liability coverage available under Liburd's insurance policy to compensate him for losses not covered by his policy with Nationwide and that such improper enforcement improperly transferred the risk of not being made whole from Nationwide to him.

Considering the purposes of the make whole doctrine and our statutory scheme regarding mandatory automobile insurance, we agree with the plaintiff that his unjust enrichment claim is ripe for adjudication.

Under the make whole doctrine, "an insurer's recovery against a tortfeasor in a subrogation lawsuit is limited to those funds and assets that remain after the insured has been [fully] compensated." (Internal quotation marks omitted.) *World Trade Center Properties, LLC* v. *QBE International Ins. Ltd.*, supra, 627 Fed. Appx. 13. Although there is authority to the contrary,[6]

---

[6] In *Winkelmann* v. *Excelsior Ins. Co.*, 85 N.Y.2d 577, 579, 650 N.E.2d 841, 626 N.Y.S.2d 994 (1995), the New York Court of Appeals considered "whether an insurer who has paid its insured the full amount due under a fire policy, but less than the insured's loss, may proceed against the third-party tortfeasor responsible for the loss before the insured has been made whole by the tortfeasor." In that case, the plaintiffs suffered a loss in excess of the payment they received from the defendant, their insurer, and both the plaintiffs and the defendant sought recovery from the tortfeasor and his insurer. Id. After the defendant settled with the tortfeasor's insurer, and while the plaintiffs' action against the tortfeasor remained pending, the plaintiffs filed a separate action against the defendant to recover for their uninsured losses. Id., 579–80. The plaintiffs alleged that the defendant violated their rights to be made whole and that "their ability to obtain payment from [the tortfeasor or his insurer]—i.e., their bargaining position—was diminished by the [premature subrogation], thus making it difficult for [the] plaintiffs to settle their claim." Id., 580. The court upheld the dismissal of the action, reasoning that it "is premature. [The] [p]laintiffs may yet recover the balance of their losses in the action against [the tortfeasor]. There is no evidence that [the tortfeasor's insurance] policy . . . has been exhausted or that his personal assets are insufficient to satisfy any additional liability to [the] plaintiffs. Accordingly, [the defendant] has not caused its insureds any damages yet. Insofar as [the] plaintiffs allege that [the defendant's] conduct 'forced' them to litigate rather than settle their claim against [the tortfeasor], that claim, even if true, does not state a cause of action against [the defendant] for impairing [the] plaintiffs' rights." Id., 580–81.

The New York court rejected the insured's contention that, just as a surety acquires no subrogation rights to pursue the debtor until the creditor is made whole, an insurer's right to subrogation did not arise until its insureds had been made whole. Id., 582. The court explained that the rights of sureties and insurers are distinguishable "because the different obligations they assume justify different rights in subrogation . . . . The obligation assumed by a surety runs to the creditor and subrogation may not in any way defeat the creditor's rights. The surety provides the creditor with a source of collateral or security for the debt of another, and the creditor may not be

we conclude that allowing an insurer's subrogation claim to deplete a tortfeasor's available liability coverage and then requiring an injured insured to pursue the tortfeasor until he has established the tortfeasor's insolvency is the type of inequitable result that the make whole doctrine is intended to prevent. See *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 456–57 (insurer's subrogation rights are not enforceable "*until after the insured has been fully compensated for her injuries*" (emphasis added; internal quotation marks omitted)); see also *Asbury Park* v. *Star Ins. Co.*, 242 N.J. 596, 606, 233 A.3d 400 (2020) (make whole doctrine provides "that the injured party should be the first to tap into the limited pool of funds and [to] recover on any loss, and when someone cannot be fully paid, the loss should be borne by . . . the insurer" (internal quotation marks omitted)); *Fischer* v. *Steffen*,

required to surrender any part of his collateral [until] payment has been made in full . . . . Thus, the surety acquires no subrogation rights to pursue the debtor until the creditor is required to release its collateral, i.e., when the creditor is made whole. . . . By contrast, the insurer's obligation runs to its insured, and then only to the extent of the policy limits. The insured has chosen to purchase a limited amount of insurance, as distinguished from requiring a guaranty of credit, and retains the right to pursue recovery for its outstanding losses. Moreover, the debtor in the insurer/insured dispute is the negligent third party whose ability to meet its obligation has not yet been tested, unlike the defaulting debtor in the surety/creditor dispute." (Citations omitted; internal quotation marks omitted.) Id., 582–83.

Federal courts in California have adopted the rule of *Winkelmann*; see *Chandler* v. *State Farm Mutual Automobile Ins. Co.*, 598 F.3d 1115, 1115, 1119–20 (9th Cir. 2010) (upholding decision of federal District Court, which had adopted rule of *Winkelmann* in absence of controlling California precedent); and at least one Connecticut Superior Court case has relied on *Winkelmann* when the court granted a motion to strike an insured's wrongful subrogation claims against her insurer. See *Davis* v. *Adeoye*, Docket No. CV-20-6109798-S, 2022 WL 16570653, *2 (Conn. Super. October 25, 2022) (make whole doctrine does not prevent insurer that has paid its insured under insurance policy from exercising its subrogation rights before insured is made whole). As we explain more fully herein, however, we find such reasoning to be wholly inconsistent with the make whole doctrine as adopted by this court. See *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 456–57 (insurer's subrogation rights are not enforceable "until *after* the insured has been fully compensated for her injuries" (emphasis added; internal quotation marks omitted)).

333 Wis. 2d 503, 514–15, 797 N.W.2d 501 (2011) (same). Indeed, in many cases, "pursuit of any recovery from an insured tortfeasor beyond the available liability insurance would be fruitless." (Internal quotation marks omitted.) *Hasper* v. *Center Mutual Ins. Co.*, 723 N.W.2d 409, 414–15 (N.D. 2006). Accordingly, if, as the plaintiff alleges, the funds paid by State Farm and retained by Nationwide would have been available to compensate the plaintiff for the uninsured losses he seeks to recover from Liburd, the plaintiff should have been the first to tap into that limited pool of funds, and Nationwide would have had to pursue its subrogation recovery from the assets of Liburd that remained. See, e.g., *Daniels* v. *State Farm Mutual Automobile Ins. Co.*, 193 Wn. 2d 563, 576, 444 P.3d 582 (2019) ("the proceeds of any recovery from a third-party tortfeasor, whether in a subrogation action or otherwise, must be allocated in such a way as to first make the insured whole").

The Appellate Court in the present case instead concluded that whether the plaintiff suffered a cognizable injury is "contingent [on] whether and to what extent the plaintiff can recover against Liburd as well as whether Liburd will be able to satisfy the hypothetical judgment." *Orlando* v. *Liburd*, supra, 227 Conn. App. 893. In other words, the court determined that the make whole doctrine does not apply unless Liburd's personal assets are insufficient to compensate the plaintiff for his uninsured losses. We disagree. The precise nature of the injury allegedly sustained by the plaintiff was the violation of his priority right to the tortfeasor's insurance coverage. In other words, rather than being contingent or hypothetical, the plaintiff's alleged injury already had occurred. See, e.g., *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 78, 717 A.2d 724 (1998) ("[i]njury is the illegal invasion of a legal right; damage is the loss . . . or harm [that] results from the injury; and damages are the rec-

ompense or compensation awarded for the damage suffered" (internal quotation marks omitted)).[7] This point illuminates the distinction between the present case and *Cadle Co.* v. *D'Addario*, supra, 111 Conn. App. 80, the case on which the Appellate Court relied in determining that the plaintiff's claim against Nationwide is not ripe. In *Cadle Co.*, the Appellate Court determined that the alleged injury was "contingent on a determination of the priorities of the creditors of the decedent's estate, the final settlement of the estate and the absence of sufficient funds in the estate to satisfy the plaintiff's claim." Id., 83. Here, by contrast, the plaintiff's priority right is established by the make whole doctrine, and the alleged invasion of that right already occurred. Unlike in *Cadle Co.*, the plaintiff's claim in the present case is not contingent on a hypothetical injury.

In addition, given the nature of subrogation, there likely is no reasonable dispute regarding Liburd's liability for property damage in the negligence action. Nationwide already has recovered funds from State Farm in satisfaction of its subrogation claim, and the basis for its recovery was Liburd's liability for damage to the plaintiff's vehicle. See *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 260, 994 A.2d 174 (2010) ("[a] subrogee has no rights against a third person beyond what the subrogor had" (internal quotation marks omitted)). In his negligence action, the plaintiff is claiming damages for diminution in value and loss of use, which are losses arising from the damage to his vehicle. "Whether the relief requested is for damages for the repair of the automobile or damages for the loss of its use, the primary facts establishing the rights of the parties remain

---

[7] "Generally, proof of a legal injury entitles a plaintiff to, at least, token or nominal damages even if no specific actual damages are proven. . . . To recover more than nominal damages . . . [a] plaintiff [must] prove the extent of those damages [attributable to] the actions of the defendants." (Citation omitted; internal quotation marks omitted.) *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 78 n.12.

the same. The two actions differ only with respect to damages." *Orselet* v. *DeMatteo*, 206 Conn. 542, 546, 539 A.2d 95 (1988); see id. ("[the insurer's] claim for the payment of the repair for the [insured] automobile is based on its subrogation rights and therefore constitutes the same cause of action as [the insured's] original claim" for loss of use of her car). For this reason, the present case is analogous to cases that are ripe because only the amount of a plaintiff's damages remained in question. See, e.g., *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 87 ("[a]lthough the exact amount of the plaintiff's damages might have remained uncertain when it commenced this action, it nevertheless was abundantly clear that the plaintiff had sustained *some* damages and that there was no hope of a full recovery" (emphasis in original)); *Weiner* v. *Clinton*, 100 Conn. App. 753, 760, 919 A.2d 1038 ("an inability to establish the exact amount of damages is indicative of a defect in a plaintiff's capacity to prove his or her case, not of a deficiency in the court's subject matter jurisdiction"), cert. denied, 282 Conn. 928, 926 A.2d 669 (2007). To be sure, the plaintiff ultimately must prove his damages for loss of use and diminution in value of the vehicle. Nevertheless, that contingency does not render his claim against Nationwide unripe.

This court's decision in *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 713 A.2d 1267 (1998), is instructive. In that case, a plaintiff brought a legal malpractice action against the defendants, his former attorneys, alleging that the defendants had failed to file an action for uninsured motorist benefits within the limitation period and that, as a result, his uninsured motorist claim was time barred. Id., 89. The trial court dismissed the action as not ripe for adjudication "because he still might prevail in an action against [his insurer] for uninsured motorist benefits." Id., 90. This court concluded that the malpractice action was ripe, even absent an

adjudication that the underlying action was time barred, meaning that the plaintiff was not required first to file his uninsured motorist claim action against his insurer simply because the defendants disputed the issues of causation and damages. Id., 92. We reasoned that "[t]o require the plaintiff to obtain a separate ruling that his uninsured motorist action is time barred does not further judicial economy. We should not, unnecessarily, add extra cases to the already overcrowded court dockets. All legal malpractice cases are based on underlying rights, for which the plaintiff originally sought legal representation. To require that the underlying dispute as to those rights, in all cases, must be completely resolved prior to bringing a malpractice action would unduly restrict the plaintiff's remedy against the allegedly negligent lawyer. . . . [B]ecause the trier of fact hearing the plaintiff's malpractice case must determine, on the basis of proper instructions as to the law, whether an uninsured motorist action is time barred, there is no need for a prior determination that the statute of limitations has run as a condition precedent to the [plaintiff's pursuit of his] case." Id.

Nationwide argues that the present case is distinguishable from *Mayer* because, "[i]f there is no finding that Liburd is liable for the claimed damages or there is no award of damages against Liburd, then the plaintiff has no claim against Nationwide . . . ." We are not persuaded. First, Nationwide's acceptance of the subrogation payment, which was premised on Liburd's liability for the accident, belies its suggestion that Liburd's liability presents a potential hurdle to the plaintiff's negligence claim. Second, our case law clearly establishes that a plaintiff has a right to recover for loss of use and diminution in property value, even if his vehicle has been repaired. See, e.g., *Anderson* v. *Gengras Motors, Inc.*, 141 Conn. 688, 692, 109 A.2d 502 (1954) ("[w]e have long held that the owner may, in addition

to damages for physical injury to his car, recover the value of its use while he is necessarily deprived of it"); *Littlejohn* v. *Elionsky*, 130 Conn. 541, 543, 36 A.2d 52 (1944) ("a new car may be badly damaged and be repaired so as to put it in a sound or good state, and yet be worth much less than before the collision"). Furthermore, there would be little gained by requiring the plaintiff to first obtain a judgment against Liburd and then to commence a new action against Nationwide to recover the amount of that judgment. The efficiency and equitable considerations that guided our analysis in *Mayer* apply equally here. Requiring the plaintiff to resolve the underlying negligence action against Liburd before he can assert his superior entitlement to the funds already recovered by Nationwide would unduly restrict the plaintiff's remedy for his alleged injury. As in *Mayer*, judicial economy is served by having both determinations made in a single lawsuit.[8]

Similarly, requiring the insured to incur the expense imposed by postjudgment enforcement efforts before he is permitted to vindicate his priority right to the available insurance proceeds received in subrogation is inconsistent with the make whole doctrine, which provides that the insured, not the insurer, should have priority to the tortfeasor's available assets. There is no more readily available asset than the tortfeasor's automobile insurance policy. The primary purpose of our statutory scheme requiring mandatory automobile insurance and minimum amounts of liability coverage

---

[8] We note that the contingent nature of the plaintiff's claim in this context is no different from an insured bringing an action against an underinsured motorist together with an action against his own insurer for underinsured motorist benefits. Although "an insured may recover uninsured or underinsured motorist benefits only after exhausting the liability limits of the tortfeasor's policy," we have observed that "an insured may commence an action for underinsured motorist benefits prior to exhausting the liability limits of the tortfeasor's policy." *Stevens* v. *Aetna Life & Casualty Co.*, 233 Conn. 460, 470 n.14, 659 A.2d 707 (1995).

is to guarantee "minimum coverage for personal injury and property damage resulting from automobile accidents . . . ." *Farmers Texas County Mutual* v. *Hertz Corp.*, 282 Conn. 535, 549, 923 A.2d 673 (2007). Nearly one century ago, this court observed that "[c]laims growing out of the operation of automobiles are particularly numerous and if all or any considerable percentage of them [was] litigated to judgment the consequent congestion in courts would be intolerable. It is a matter of common knowledge that the great majority of such claims are adjusted; settlement is the rule and contest the exception. The advantages of compromise to all parties concerned are manifest. The injured party obtains acceptable compensation without the delay, expense, inconvenience, anxiety and uncertainty of result attendant [on] the pursuit of litigation; the party primarily liable is relieved of like annoyances and he or his insurer usually obtains the benefit of acceptance by the claimant of a less[er] amount than would satisfy him but for the inducements attending a prompt and amicable compromise." *Bartlett* v. *Travelers Ins. Co.*, 117 Conn. 147, 154, 167 A. 180 (1933). Requiring an injured insured to endure "the delay, expense, [and] inconvenience" involved in obtaining and attempting to satisfy a judgment against the responsible third party before he can assert his priority right to the guaranteed source of recovery would render that priority right illusory.[9] Id.

---

[9] We are not persuaded by the claims of Nationwide and the amici curiae, the Insurance Association of Connecticut and the American Property Casualty Insurance Association, that allowing the plaintiff's claim to proceed under the make whole doctrine will render "the written terms of any insurance policy . . . superfluous" and "threaten insurance availability and affordability." As we explained in *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 469 n.9, the make whole doctrine "is merely the default rule and . . . parties are free to provide differently in their contract, provided they do so expressly." Alternatively, the insurer can confirm directly from its insured or his attorney that he has been fully compensated for his entire loss before exercising its subrogation right. If either the insured is not responsive or a dispute arises as to whether the insured has been made whole, the insurer may institute a declaratory judgment action to determine its right to subrogate against the third party. See

For the foregoing reasons, we disagree with the Appellate Court that the plaintiff must obtain a judgment against Liburd and exhaust all collection efforts before his unjust enrichment claim against Nationwide will be ripe. Liburd's liability has already been accepted by his insurer, the diminution in value and loss of use damages claimed by the plaintiff have been recognized by this court, and Nationwide has exhausted Liburd's insurance coverage, which might have been available to compensate the plaintiff for those injuries. Under these circumstances, the plaintiff's unjust enrichment claim is ripe for adjudication.

As previously noted in this opinion, the trial court relied on a somewhat different ground from that advanced by the Appellate Court in concluding that the plaintiff's claim was not ripe. In particular, the trial court concluded that the plaintiff's failure to "allege the amount of his claimed damages, the amount subrogated by his insurer, or the limits of Liburd's coverage" rendered his claim nonjusticiable. Because this reasoning also raises an issue of the court's subject matter jurisdiction, we address it. The court reached its conclusion after considering two cases decided by the same federal district judge sitting in the United States District Court for the District of Montana.

In *James Lee Construction, Inc.* v. *Government Employees Ins. Co.*, supra, 478 F. Supp. 3d 1057, on which the plaintiff relied, two insureds brought an action against their insurer, asserting various causes of action premised on their insurer's premature subrogation against the tortfeasor. See id., 1060–61. The insureds alleged that their insurer's premature subrogation against the tortfeasor "impaired their ability to recover from the at-fault driver by depleting the available insurance coverage." Id., 1061. The court rejected the insur-

footnote 10 of this opinion.

er's argument that the alleged harm to the insureds' interest in being made whole under Montana state law was "too speculative because it is impossible to know whether the [insureds would] fully recover until after their claim against the at-fault driver [was] resolved." (Internal quotation marks omitted.) Id. The court explained that the insureds' allegations that they had suffered damages in excess of the tortfeasor's remaining insurance coverage coupled with "the reasonable inference that [their insurer's] subrogation weaken[ed] their litigation position against the at-fault driver and her insurer" were sufficient "to establish a substantial risk that the [insureds would] not be made whole." (Internal quotation marks omitted.) Id., 1062.

By contrast, in the other Montana case, *Johnson* v. *State Farm Mutual Automobile Ins. Co.*, supra, 2020 WL 4784692, after one of the plaintiffs was involved in a car accident, the plaintiffs' insurer paid the plaintiffs "an unspecified amount" under their automobile insurance policy and exercised its right to subrogation against the tortfeasor's insurer. Id., *1. The plaintiffs brought an action, asserting a negligence cause of action against the tortfeasor and several causes of action against their insurer premised on its premature subrogation recovery. Id. The insurer moved to dismiss the action, alleging, among other things, that the plaintiffs lacked standing to assert their claims under the make whole doctrine "because they still have the opportunity to recover their total damages from [the tortfeasor] and her insurer." Id., *2. The court rejected that reasoning, explaining that "a plaintiff has a concrete interest under Montana law in recovering from the [tortfeasor] before his insurer subrogates and, by alleging damages in excess of policy limits, can show that his insurer's subrogation creates a substantial risk that he will not be made whole." Id. Nevertheless, the court agreed with the insurer that the plaintiffs lacked stand-

ing because they failed to allege facts to demonstrate the likelihood of their claimed injury, such as "the amount of their damages, the amount [of the subrogation recovery], or [the tortfeasor's] policy limits." Id.

Although these cases were decided under the analytical framework for assessing standing, the same reasoning applies to the requirement of an actual or imminent injury for purposes of ripeness. Federal courts, which also limit themselves to deciding cases or controversies, have recognized that "[s]tanding and ripeness are closely related doctrines that overlap most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical." (Internal quotation marks omitted.) *New York Civil Liberties Union* v. *Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008); see also *Twitter, Inc.* v. *Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) ("[w]hether framed as an issue of standing or ripeness, an injury must involve an invasion of a legally protected interest that is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical" (internal quotation marks omitted)).

The trial court in the present case rejected the plaintiff's reliance on *James Lee Construction, Inc.*, concluding that the plaintiff's complaint suffers from the same deficiencies as the complaint at issue in *Johnson* because the plaintiff failed to allege the total amount of his damages, the amount of Nationwide's subrogation recovery from Liburd's insurer, or the limits of Liburd's liability coverage. Considering both the allegations in the operative complaint and the undisputed facts in the record; see, e.g., *Giannoni* v. *Commissioner of Transportation*, supra, 322 Conn. 349; we disagree with the trial court's reliance on *Johnson*.

As evidenced by the emails appended to the plaintiff's memorandum of law opposing the court's own motion to dismiss, Nationwide's subrogation recovery of $25,000

exhausted the limits of Liburd's liability coverage for property damage. In the operative complaint, the plaintiff alleges that he has suffered uninsured losses for which he has not been compensated, namely, the diminution in value and loss of use of his vehicle. Although the plaintiff does not allege the total amount of his damages, he has alleged damages in excess of Liburd's policy limits because it is undisputed that Nationwide's subrogation exhausted the limits of Liburd's liability coverage for property damage. Therefore, as the District Court recognized in *James Lee Construction, Inc.*, allegations that the plaintiff suffered damages in excess of the tortfeasor's remaining insurance coverage coupled "with the reasonable inference that [Nationwide's] subrogation weaken[ed] [the plaintiff's] litigation position against the [tortfeasor]" are sufficient "to establish a substantial risk that the [plaintiff] will not be made whole." (Internal quotation marks omitted.) *James Lee Construction, Inc.* v. *Government Employees Ins. Co.*, supra, 478 F. Supp. 3d 1062. Consistent with this reasoning and the purpose of the make whole doctrine, we conclude that the plaintiff's unjust enrichment claim is ripe for adjudication.[10]

## II

As an alternative ground for affirming the Appellate Court's judgment, Nationwide claims that the plaintiff

---

[10] During oral argument before this court, although counsel for Nationwide maintained that the plaintiff's unjust enrichment claim was not ripe, he conceded that there is a justiciable controversy regarding the allocation of the proceeds from Liburd's insurance policy. Specifically, when discussing a hypothetical scenario in which the plaintiff, rather than Nationwide, had recovered $25,000 from Liburd's insurer to compensate him for both his insured losses (repairs to the vehicle) and uninsured losses (diminution in value and loss of use), Nationwide's counsel stated that, if the plaintiff refused to tender the entire $25,000 to Nationwide, Nationwide could bring a declaratory judgment action regarding the allocation of the plaintiff's recovery *before* asserting its subrogation claim against Liburd. Counsel also stated that the plaintiff likewise could have instituted a justiciable declaratory judgment action regarding the allocation of its subrogation recovery.

lacks standing to assert his unjust enrichment claim. It argues that the plaintiff (1) "has conveyed no monetary benefit to Nationwide that has been wrongfully retained," and (2) "has [not] suffered any direct deprivation of money or property capable of remedy as a result of the funds paid to Nationwide by State Farm." According to Nationwide, the alleged injury is " 'indirect, remote or derivative' " because it depends on "speculative and hypothetical damages [that] may, at some point in the future, be awarded in [his] favor against Liburd." The plaintiff responds that the facts alleged demonstrate that he suffered a direct injury as a result of Nationwide's subrogation recovery from State Farm "because Nationwide's subrogation fully depleted . . . Liburd's liability policy before the plaintiff ha[d] been made whole." We conclude that the plaintiff has standing to assert his unjust enrichment claim.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he . . . has, in an individual or representative capacity, some real interest in the cause of action . . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring [an action] or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and

injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *State* v. *Bradley*, 341 Conn. 72, 79–80, 266 A.3d 823 (2021).

There is no merit to Nationwide's argument that the plaintiff lacks standing because he allegedly did not convey a benefit to Nationwide. As we previously noted in part I of this opinion, a claim for unjust enrichment may arise from an indirect benefit conveyed by a third party to the defendant. See *Geriatrics*, *Inc.* v. *McGee*, supra, 332 Conn. 25. The plaintiff's allegations that Nationwide accepted funds from State Farm in satisfaction of its subrogation claim that otherwise would have been available to indemnify Liburd in the negligence action support an unjust enrichment claim premised on an indirect benefit conveyed by a third party.

For the reasons stated in part I of this opinion regarding the imminence of the plaintiff's alleged injury for purposes of ripeness, we also conclude that the allegations in the operative complaint, coupled with the undisputed facts regarding the limits of Liburd's liability coverage, establish that the plaintiff has a specific, personal and legal interest in Nationwide's subrogation recovery under the make whole doctrine and that "there is a possibility, as distinguished from a certainty," that Nationwide's enforcement of its subrogation right has adversely affected that legally protected interest. (Internal quotation marks omitted.) *State* v. *Bradley*, supra, 341 Conn. 80. Consequently, Nationwide's contention that the plaintiff has failed to allege a direct injury sufficient to establish his standing to assert his unjust enrichment claim fails.[11]

_____

[11] We note that, because the trial court dismissed the plaintiff's unjust enrichment count on its own motion after having heard argument on Nationwide's motion to strike, the court did not rule on the motion to strike. In concluding that the matter is justiciable, we take no position regarding the merits of the plaintiff's claims or the legal sufficiency of his complaint. See,

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's partial judgment of dismissal and to remand the case to that court for further proceedings.

In this opinion the other justices concurred.

---

e.g., *Seymour* v. *Region One Board of Education*, 261 Conn. 475, 481, 803 A.2d 318 (2002).